RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-4204

DIERE R. DEJOURNETT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cr-00513—Sara E. Lioi, District Judge.

Decided and Filed: March 30, 2016

Before: COLE, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Dennis C. Belli, Columbus, Ohio, for Appellant. Samuel A. Yannucci, UNITED STATES ATTORNEY'S OFFICE, Akron, Ohio, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.  The public has the constitutional right to access records in criminal proceedings.  But, like most other rights of its kind, it is not absolute and may be abridged if the district court finds that nondisclosure is narrowly tailored to serve an overriding interest.  In this case, the district court prevented the public from accessing defendant's plea agreement without providing on-the-record findings justifying nondisclosure.  We are obligated to remand the case for it to comply with that requirement.  We otherwise affirm defendant's sentences.

1

I.

In this criminal case, defendant pleaded guilty to two counts:  (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and (2) money laundering.  There was no cooperation or substantial assistance clause in the agreement.

After entering his guilty plea, defendant requested that the plea agreement be "unsealed on Pacer."[1]  Defendant argued that neither he, nor the government, nor the district court had any legitimate interest in sealing the document and, therefore, it should remain accessible to the public.  The district court denied his request, citing its universal policy to make plea agreements available only to the parties and court personnel.  The court did not expound on its policy, simply stating, "The Court has reasons to do what it's done."

In preparation for defendant's sentencing hearing, the probation department prepared a presentence investigation report.  In it, the probation officer calculated defendant's criminal history score at eight points, two of which were for committing the sentencing offense "while under a criminal justice sentence."  That criminal justice sentence was in connection with a 2011 conviction for operating a vehicle under the influence, for which defendant was sentenced to a 180-day jail term that was suspended on the condition that he "obey laws for 2 years."  Defendant objected to the addition of the two criminal history points, arguing that, although the difference would not affect his sentence, it would likely affect his treatment by the Bureau of Prisons.  The district court entertained defendant's objection, but overruled it based on our decision in *Harris v. United States*, 204 F.3d 681 (6th Cir. 2000).  The court sentenced defendant to a mandatory minimum of twenty years in prison.

On appeal, defendant challenges the district court's decisions to prevent the public from accessing his plea agreement and to add two criminal history points under U.S.S.G. § 4A1.1(d).

---

[1]"PACER" stands for Public Access to Court Electronic Records.  It "is an electronic public access service that allows users to obtain case and docket information online from federal appellate, district, and bankruptcy courts, and the PACER Case Locator.  PACER is provided by the Federal Judiciary in keeping with its commitment to providing public access to court information via a centralized service."  PACER Homepage, https://www.pacer.gov/ (last visited March 24, 2016).

II.

We deal first with defendant's contention that the district court erred in concluding that his conditionally suspended sentence requiring him to "obey [the] laws" qualifies as a "criminal justice sentence."[2]

The Sentencing Guidelines instruct district courts to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). The Application Note to U.S.S.G. § 4A1.1(d) states: "For purposes of this subsection, a 'criminal justice sentence' means a sentence countable under § 4A1.2 . . . having a custodial or supervisory component, although active supervision is not required for this subsection to apply. For example, a term of unsupervised probation would be included; but a sentence to pay a fine, by itself, would not be included." U.S.S.G. § 4A1.1(d) cmt. n.4 (2014). A conditionally discharged sentence is "the 'functional equivalent' of an unsupervised probation" and therefore qualifies as a "criminal justice sentence" under § 4A1.1(d). *United States v. Miller*, 56 F.3d 719, 722 (6th Cir. 1995); *United States v. Trammel*, 404 F.3d 397, 404 (6th Cir. 2005); *United States v. Johnson*, 238 F.3d 425, 2000 WL 1769588, at *4 (6th Cir. 2000) (unpublished table decision; per curiam); *United States v. Gay*, 198 F.3d 247, 1999 WL 1111517, at *7 (6th Cir. 1999) (unpublished table decision; per curiam); *United States v. Brooks*, 121 F.3d 710, 1997 WL 437079, at *1 (6th Cir. 1997) (unpublished table decision); *accord United States v. Rollins*, 378 F.3d 535, 538–39 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 682–83 (6th Cir. 2000); *see also United States v. Labella-Szuba*, 92 F.3d 136, 138 (2d Cir. 1996) ("[E]very circuit that has compared a conditional discharge sentence to a sentence of unsupervised release has found them to be functionally equivalent.").

Defendant does not dispute that his conviction for operating a vehicle under the influence is a countable criminal justice sentence. *See* U.S.S.G. § 4A1.2(c) cmt. n.5 (2014). Nor does he

---

[2]The district court was not required to rule on this PSIR challenge because it did not affect sentencing (the high end of the challenged Guidelines range was 235 months, and defendant was subject to a mandatory minimum of 240 months). *See* Fed. R. Crim. P. 32(i)(3)(B). However, the district court chose to address defendant's challenge, presumably in light of defendant's contention that it would affect how the Bureau of Prisons will treat him during his incarceration. Because the district court opted to address the merits, we do the same.

dispute that his sentence was conditionally suspended. Nevertheless, defendant argues that he does not belong in this list of cases because they are built on a factual premise not proven by the government in this case. He traces the distinguishing feature to *United States v. Gay*, which addressed whether a "PNC" sentence (shorthand for a sentence suspended "provided no convictions") qualified as a criminal justice sentence. In *Gay*, the probation officer confirmed with officials at the local state court that a PNC sentence was the "functional equivalent" of unsupervised probation. *Gay*, 1999 WL 1111517, at *7. Defendant argues that *Harris*, the case relied on by the district court below, implicitly took judicial notice of *Gay*'s factual finding when it held, "As a form of conditional discharge, a PNC sentence is the 'functional equivalent of unsupervised probation.'" *Harris*, 204 F.3d at 682 (quoting *Gay*, 1999 WL 1111517, at *7). In contrast, here, the government did not confirm with the local state court that, as a matter of "local practice," the condition "obey [the] laws" is the functional equivalent of unsupervised probation. Thus, defendant argues, there is no factual basis for the two criminal history points.

We disagree that the question whether a particular sentence is the "functional equivalent of unsupervised probation" is a factual one dependent on "local practice." As for *Gay*, the court's discussion of what defendant describes as "local practice" was dicta. By that point in the opinion, the court had already held that "[s]uspension on condition of one-year ["provided no convictions"] is nothing more than a one year conditional discharge. As such, under *Miller*, it should be treated as unsupervised probation, and § 4A1.1(d) of the Sentencing Guidelines should apply." *Gay*, 1999 WL 1111517, at *7. As the quoted passage indicates, *Gay* relied on an earlier decision, *United States v. Miller*. In that case, this court held that a conditional discharge qualifies as a "criminal justice sentence" without mentioning local practice. *Miller*, 56 F.3d at 721–22. It looked instead to how such sentences are treated under state law. *Id.* at 722 (citing Kentucky's conditional discharge statute, Ky. Rev. Stat. § 533.020(3), and stating, "Kentucky courts also treat conditional discharge as the equivalent of probation").

Defendant's sentence was handed down by an Ohio court, and its law tells us three things about his conditionally suspended sentence. *First*, in sentencing a person convicted of operating a vehicle under the influence, "[a] court also may impose on the offender any other conditions of

community control that it considers necessary." Ohio Rev. Code § 4511.19(G)(1)(a)(i).[3] *Second*, a "court shall require as a condition of any community control sanction that the offender abide by the law . . . ." Ohio Rev. Code § 2929.25(C)(2). *And third*, "[C]ommunity control is the functional equivalent of probation[.]" *State v. Talty*, 814 N.E.2d 1201, 1205 (Ohio 2004).

In short, "obey [the] laws" is a required condition to any community control sanction, Ohio Rev. Code § 2929.25(C)(2), and such sanctions are "the functional equivalent of probation," *Talty*, 814 N.E.2d at 1205. Because defendant was serving a sentence that is "the functional equivalent of probation" at the time he committed the instant offenses, the district court correctly assessed two criminal history points under U.S.S.G. § 4A1.1(d). We therefore affirm defendant's sentences.

III.

Defendant also argues that the district court's decision to prevent public access to his plea agreement violates the First Amendment right to observe criminal proceedings and the common law right to access judicial records.

The First Amendment protects the constitutional right to access criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). This right attaches when two "complementary considerations" are met: (1) the place and process have "historically been open to the press and general public"; and (2) "public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise Co. v. Superior Court (Press–Enterprise II)*, 478 U.S. 1, 8 (1986). Once the First Amendment right of access attaches, it can "be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise Co. v. Superior Court (Press–Enterprise I)*, 464 U.S. 501, 510 (1984). "The interest [justifying

---

[3]Defendant argues that the sentencing court was not required to impose a community control sanction, thereby making his case analogous to *United States v. Johnson*, 43 F.3d 1211 (8th Cir. 1995). We agree that the decision to suspend defendant's sentence was discretionary, but disagree that this makes *Johnson* analogous. In *Johnson*, the defendant's prior sentence was stayed without an accompanying term of probation of any kind, though the sentencing court had the discretion to impose one. *Id.* at 1215. The Eighth Circuit said that to hold that such a deliberately non-probationary sentence qualified as "probation" would depart from the ordinary meaning of the term. *Id.* Here, there are no similar concerns, as the sentencing court exercised its discretionary authority to impose a condition on suspending defendant's sentence—"obey [the] laws."

closure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.*

This court has applied *Richmond Newspaper* and the *Press-Enterprise* cases to judicial records. *See In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) ("This right is not limited to the trial itself but can apply to other criminal proceedings and records."); *United States v. Miami Univ.*, 294 F.3d 797, 821 (6th Cir. 2002). We have not, however, addressed the specific issue whether plea agreements are subject to this constitutional protection. To answer this question, we look to whether plea agreements have been traditionally open to the public and whether public access plays a role in the proper functioning of that aspect of our system.

Plea agreements play a central role in our criminal justice system. They reflect the culmination of the government's investigation of criminal activity in our communities, as well as an acknowledgement of guilt by the person accused of the crime. In this way, what has been said of the plea bargaining process can also be said of the plea agreement itself: "It is not some adjunct to the criminal justice system; it *is* the criminal justice system." *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012). As "criminal justice today is for the most part a system of pleas," *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) (noting that pleas account for ninety-seven percent of federal convictions), the manner and frequency with which prosecutors achieve convictions based on guilty pleas is a matter of public importance. And just as the public's presence at judicial proceedings plays a significant role in ensuring fairness in our criminal trials, *Richmond Newspapers*, 448 U.S. at 569–74, its access to plea agreements negotiated by the government and an accused plays a significant role in monitoring the administration of justice by plea. These considerations, which are far from novel, lead us to the equally uncontroversial conclusion that plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial records. *See Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (applying First Amendment right of access to plea agreements); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465-66 (9th Cir. 1990) (same); *United States v. Haller*, 837 F.2d 84, 86–87 (2d Cir. 1988) (same).

Having determined that the public has a constitutional right to access plea agreements, there is little question that the case must be remanded. The public may be prevented from

accessing plea agreements "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise I*, 464 U.S. at 510. The government does not argue that the district court satisfied this exacting standard, claiming only that the court's blanket policy is "rationally related" to privacy interests of criminal defendants. Even if the government had offered belated justifications for the constitutional abridgment, the Supreme Court has instructed, in language directed at district courts, "The interest [justifying nondisclosure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.*

The district court's failure to articulate its reasoning also fails to satisfy the less-burdensome standard for abridging the common law right of public access to judicial records. Like its constitutional counterpart, the common law right is not absolute. It may be curtailed if, in the exercise of the court's sound discretion, it determines that non-disclosure is warranted. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). However, the Supreme Court has made clear that such discretion is "to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* Having failed to identify the "relevant facts and circumstances" justifying non-disclosure in "th[is] particular case," *id.*, the district court's decision still falls short under the common law framework, *see Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("Having 'supervisory power' or 'discretion' to deny access to documents does not, however, imply that the District Court operates without standards.").

The district court's ruling, based on a blanket policy, does not satisfy either the constitutional or common law standards. We retain jurisdiction and remand the case so that the district court may state its case-specific findings on the record. 28 U.S.C. § 2106; *see also United States v. Kooistra*, 796 F.2d 1390, 1391 (11th Cir. 1986) (retaining jurisdiction and remanding "so that the required findings [for justifying sealing of judicial records] may be entered").

IV.

We affirm defendant's sentences, but vacate the August 21, 2014, order prohibiting public access to defendant's plea agreement and remand for the limited purpose of placing on the record the district court's justification for preventing public access in this case. We retain jurisdiction.