SILER, J., delivered the opinion of the court in which NORRIS, J., joined. STRANCH, J. (pp. 420-33), delivered a separate dissenting opinion.
*410 OPINION
SILER, Circuit Judge.
In this appeal, a group of inmates sentenced to death in Ohio challenge the constitutionality of the State’s newly enacted statutory scheme concerning the confidentiality of information related to lethal injection. The district court dismissed some of their claims for a lack of standing and the remainder for failure to state a claim. For the reasons stated below, we AFFIRM.
I.
In December 2014, the Ohio General Assembly passed Substitute House Bill No. 663 (“HB 663”) to address the confidentiality of information related to lethal injection in Ohio. HB 663 contains four provisions relevant to this appeal. First, under HB 663, the identity of individuals and entities that participate in the lethal injection process is treated as confidential and privileged under law; cannot be disclosed as a public record; and is not subject to disclosure during judicial proceedings, except in limited circumstances (the “Confidentiality Provision”). Ohio Rev. Code §§ 149.43(A)(l)(cc), 2949.221(B)-(C).[1] *411 Second, HB 663 directs courts to seal records that contain information related to the identity of an individual or entity that participates in the lethal injection process unless “the court determines that the record is necessary for just adjudication” (the “Record-Sealing Provision”), ■ Id, § 2949.222. If the court makes such a determination, it must hold a private hearing to review the record, and the record is subject to further disclosure only if, “through clear and convincing evidence presented in the private hearing, [the court] finds that the person whose identity is protected appears to have acted unlawfully with respect to the person’s involvement in the administration of a lethal injection.” Id. § 2949.222(C).[2] Third, HB 663 prevents licensing authorities from taking disciplinary action against an individual or entity based on participation in the lethal injection process (the “Licensure-Immuni *412 ty Provision”). Id. § 2949.221(E).[3] And fourth, HB 663 permits an individual or entity who has participated in the lethal injection process to bring “a civil cause of action against any person who discloses the identity and participation in the activity in violation of this division” (the “Civil-Action Provision”). Id. § 2949.221(F).[4]
Shortly after HB 663 was passed, Ronald Phillips, Raymond Tibbetts, and Robert Van Hook, prisoners sentenced to death in Ohio (the “Plaintiffs”), filed an action in federal court against Ohio Governor John Kasich, Ohio Attorney General Mike DeWine, Director of the Ohio Department of Rehabilitation and Correction Gary Mohr, and Warden of the Southern Ohio Correctional Facility Donald Morgan (the “Defendants”), challenging HB 663’s constitutionality.[5] The Plaintiffs brought several claims: (1) a claim that HB 663 unconstitutionally burdens speech (the “Free-Speech Claim”); (2) a claim that HB 663 creates a regime of unconstitutional prior restraint (the “Prior-Restraint Claim”); (3) claims that HB 663 violates the Plaintiffs’ equal-protection and due-process rights, as well as their right of access to the courts (the “Equal-Protection, Due-Process, and Right-of-Court-Access Claims”); and (4) a claim that HB 663 denies the Plaintiffs constitutionally-protected access to government proceedings (the “Right-of-Access-to-Government-Proceedings Claim”).
Mohr and Morgan moved to dismiss the claims against them for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). They argued that the Plaintiffs lacked standing to challenge the Licensure-Immunity Provision and the Civil-Action Provision. In addition, Mohr and Morgan asserted that HB 663’s provisions do not suppress the Plaintiffs’ *413 speech because they only “limit the information that the State will provide to the public,” and that HB 663 is not an unconstitutional prior restraint because it simply “mak[es] information confidential” and “does nothing to restrain the exercise of a First Amendment right.” Mohr and Morgan also claimed that the Plaintiffs failed to state an equal-protection, due-process, access-to-the-courts, or access-to-government-proceedings claim. Governor Kasich and DeWine moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, claiming that the Eleventh Amendment barred the Plaintiffs’ claims against them. They also joined in the arguments raised in Mohr’s and Morgan’s motion to dismiss.
The district court granted the Defendants’ motions to dismiss. Phillips v. DeWine, 92 F.Supp.3d 702, 705, 718 (S.D. Ohio 2015). After assuming for the sake of argument that the Eleventh Amendment did not bar the claims against Governor Ka-sich and DeWine, the court found that the Plaintiffs lacked standing to challenge the Licensure-Immunity Provision and the Civil-Action Provision. Id. at 709-12. It reasoned that the Plaintiffs suffered only “conjectural or hypothetical injuries” rather than the “requisite distinct and palpable injury” required under Article III. Id. at 711.
In addition, the district court found that the Plaintiffs’ remaining claims were not plausible. The court read HB 663 as “simply cut[ting] off the [Ohio] government as the source of ... information” regarding Ohio’s execution procedures and “plac[ing] a government worker on the hook for acting as a source.” Id. at 713. Accordingly, the court found, the statute did not create an unconstitutional prior restraint. Id. at 713-14: The court also concluded that the Plaintiffs had no constitutional right to the information they claimed they were being deprived of and that their First, Fifth, and Fourteenth Amendments claims failed because they were premised on such a right. Id, at 714-16. Therefore, the district court dismissed the case. Id. at 718.[6] It also denied the Plaintiffs’ pending motions for a preliminary injunction and for expedited discovery as moot.
II.
We review dismissals for lack of subject-matter jurisdiction, including those for lack of standing, de novo. Parsons v. U.S. Dep’t of Justice, 801 F.3d 701, 709 (6th Cir. 2015) (citing Miller v. Cincinnati, 622 F.3d 524, 531 (6th Cir. 2010)). To the extent we must reach a disputed issue of fact that the district court resolved, however, we review for clear error. See Askins v. Ohio Dep’t of Agric., 809 F.3d 868, 872 (6th Cir. 2016). Otherwise, we construe the complaint in the light most favorable to . the Plaintiffs and accept all well-pleaded factual allegations as true. Barber v. Miller, 809 F.3d 840, 843 (6th Cir. 2015) (citing Thompson v. Bank of Am., N.A., 773 F.3d 741, 750 (6th Cir. 2014)).
Likewise, we review de novo a grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Stein v. Regions Morgan Keegan Select High Income Fund, Inc., 821 F.3d 780, 785 (6th Cir. 2016) (citing Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012)). Again, we construe the complaint in the light most favorable to the Plaintiffs and accept all well-pleaded factual allegations as true. *414 Id. (citing Laborers’ Local 265 Pension Fund v. iShares Tr., 769 F.3d 399, 403 (6th Cir. 2014)). To withstand a 12(b)(6) motion, “the complaint must contain ‘enough facts to state a claim to relief that is plausible on its face.’ ” Long v. Insight Commc’ns of Cent. Ohio, LLC, 804 F.3d 791, 794 (6th Cir. 2015) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
Notwithstanding the district court’s reasoning, we may affirm its dismissal of the case “on any ground supported by the record.” Haines v. Fed. Motor Carrier Safety Admin., 814 F.3d 417, 423 (6th Cir. 2016) (quoting Bangura v. Hansen, 434 F.3d 487, 498 n.3 (6th Cir. 2006)).
III.
A.
At the outset, we must determine whether the Plaintiffs have standing, and, if so, for which of their claims. See Murray v. U.S. Dep’t of Treasury, 681 F.3d 744, 748 (6th Cir. 2012). Article III, Section 2 of the Constitution provides that federal courts may hear and 'resolve only “Cases” and “Controversies.” As a result, “a plaintiff must demonstrate standing for'each claim he seeks to press.” Davis v. Fed. Election Comm’n, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). To have standing, a plaintiff must establish (1) an “injury in fact,” meaning “an invasion of a legally protected interest [that] is (a) concrete and particularized and (b) ‘actual or imminent, not “conjectural” or “hypothetical”’”; (2) “a causal connection between the injury and the conduct complained of,” i.e., the injury complained of must be' “fairly .., trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court”; and (3) that it is “ ‘likely,’ as opposed to merely ‘speculative,’ that the injury will be ‘redressed by a favorable decision.’ ” Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (alterations in original) (citations omitted). These elements are commonly referred to as the “injury-in-fact,” “causation,” and “redressability” requirements. See Sprint Commc’ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008). Under this standard, the Plaintiffs lack standing to bring their Free-Speech and Prior-Restraint Claims.
The Plaintiffs attempt to show that they—as death row inmates—are the “object” of HB 663 and that they therefore have standing to challenge the statute. In Lujan, the Supreme Court indicated that when “the plaintiff is himself an object of the [government] action ... at issue ..., there is ordinarily little question that the action or inaction has caused him injury, and that, a judgment preventing or requiring the action will redress it.” 504 U.S. at 561-62, 112 S.Ct. 2130. But the Court distinguished scenarios where a plaintiff is the “object” of a government action from cases in which “a plaintiffs asserted injury arises from the government’s allegedly unlawful regulation ... of someone else.” Id. at 562, 112 S.Ct. 2130. In these instances, “much more is needed” and standing “is ordinarily substantially more difficult to establish.” Id.
In support of them argument, the Plaintiffs claim that the “principal object” of HB 663 is “[t]he facilitation of the[ir] death[s].” HB 663 may have been enacted with- this broad purpose in mind, but that is insufficient to make the Plaintiffs the “object” of the statute within the meaning of Lujan. Instead, the relevant question is whether the Plaintiffs are within the group *415 of individuals 'whose conduct the statute regulates. See Lujan, 504 U.S. at 562, 112 S.Ct. 2130; State Nat. Bank of Big Spring v. Lew, 795 F.3d 48, 53 (D.C. Cir. 2015). Upon examination, HB 663 plainly regulates third parties rather than the Plaintiffs. As discussed above, the Licensure-Immunity Provision prohibits licensing authorities from taking disciplinary action against an individual based on his or her participation in the lethal injection process. Ohio Rev. Code § 2949.221(E). Because the Plaintiffs lack the capacity to censure, delicense, or otherwise discipline anyone involved in the lethal-injection process, they are not the objects of this provision.[7] Likewise, the Record-Sealing Provision directs courts—not the Plaintiffs—to seal certain information. Id. § 2949.222. As for the Confidentiality Provision and the Civil-Action Provision, they prohibit or penalize the disclosure[1] of the ■ identity of participants in the execution process. See id. §§ 149.43(A)(l)(cc), 2949.221(B)-(C), (F). But the Plaintiffs have not argued that they have information they are prevented from disclosing, and they have indicated that it is “unlikely” that they will obtain such identifying information. Thus, they are not part of the group whose conduct the provisions govern. As a result, the Plaintiffs cannot claim standing as the “objects” of HB 663 under Lujan.
But this is not the end of the matter, because a plaintiff may have standing even if he is not the object of the relevant statute, though it will be more difficult to show. See Lujan, 504 U.S. at 561-62, 112 S.Ct. 2130. Nonetheless,- the Plaintiffs’ remaining arguments fail to establish standing for their Free-Speech and Prior-Restraint Claims.
To establish standing for a free-speech claim, the Plaintiffs generally must show that “the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.” Parsons v. U.S. Dep’t of Justice, 801 F.3d 701, 711 (6th Cir. 2015) (citing Clapper v. Amnesty Int’l USA, — U.S.-, 133 S.Ct. 1138, 1153, 185 L.Ed.2d 264 (2013); Nat’l Right to Life Political Action Comm. v. Connor, 323 F.3d 684 (8th Cir. 2003)). In the typical case, a statute must be enforced against the plaintiff before he may challenge its constitutionality, but pre-enforcement is available in some contexts if “threatened enforcement [is] sufficiently imminent”— that is, there is “a credible threat” that the provision will be enforced against the plaintiff. Susan B. Anthony List v. Driehaus, — U.S.-, 134 S.Ct. 2334, 2342, 189 L.Ed.2d 246 (2014).[8] Though they aver that HB 663 negatively impacts their right to free speech, the Plaintiffs have not claimed that - they hold any information *416 that the statute prevents them from disclosing, and they have averred that it is “unlikely” that they will obtain such information. Moreover, they have not claimed that anyone has threated action against them under the statute. The district court concluded that the Plaintiffs could not have the Civil-Action Provision enforced against them because it created potential liability only for an individual who disclosed “information obtained in an official capacity.” Phillips, 92 F.Supp.3d at 712. But we need not decide whether this is the correct reading of HB 663. Regardless of whether the statute could conceivably apply to the Plaintiffs, they have not shown a credible threat that any of its provisions .could be enforced to prevent the Plaintiffs from engaging in protected speech. Therefore, any claimed injury is conjectural and hypothetical and will not satisfy the injury-in-fact requirement. See Clapper, 133 S.Ct. at 1147 (“Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending.” (quoting Lujan, 504 U.S. at 565 n.2, 112 S.Ct. 2130)).[9]
As for the Prior-Restraint Claim, we have held that “the prospect of prior restraint and resulting self-censorship can itself constitute the required actual injury” under Article III. Prime Media, Inc. v. City of Brentwood, 485 F.3d 343, 351 (6th Cir. 2007). Nonetheless, “the requirement of an actual injury is not obviated by ... [a] prior restraint claim.” Id. The Plaintiffs must, therefore, show that they are in fact “subject to a prior restraint on protected expression” to establish a sufficient injury. Van Wagner Boston, LLC v. Davey, 770 F.3d 33, 38 (1st Cir. 2014); see also Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1183-84 (10th Cir. 2010) (“[W]e conclude Plaintiffs do. not have standing as to this alleged prior restraint. Plaintiffs have cited to nothing in the record indicating their speech or association was altered or deterred in any way by the code, nor have we found any such evidence in our de novo review of the record.” (footnote omitted)). The Plaintiffs allege that the Record-Sealing Provision is an unconstitutional prior restraint because it mandates the sealing of documents during litigation and that the Civil-Action Provision is also a prior restraint because it grants the Director of the Ohio Department of Rehabilitation and Correction “unfettered discretion” to permit the disclosure of the identities of lethal-injection participants. But, as discussed above, the Plaintiffs have not claimed that there is any speech they are likely to engage in that would require pri- or approval or otherwise be impeded under these provisions. Thus, they have failed to establish that they are subject to any prior restraint that HB 663 conceivably imposes, and they have failed to show an injury-in- *417 fact to support this claim. See Van Wagner Boston, 770 F.3d at 38.
In their complaint, the Plaintiffs claim that “seriously botched lethal[-]injection executions” have occurred in Ohio, that they have “imminent execution dates,” and that they' have challenged Ohio’s execution practices, and protocols in the past. They aver that, as a result of HB 663, it is “more likely” that their executions will not meet legal standards. But it is not enough that the Plaintiffs’ executions be imminent, because a validly imposed death sentence that is properly carried out is not “an invasion of a legally protected interest.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130; see also Gregg v. Georgia, 428 U.S. 153, 169, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). While a deficient execution is a very serious' matter, the existence of deficiencies in this case is only conjectural or hypothetical and is therefore not imminent for Article III purposes. See Lujan, 504 U.S. at 564 n.2, 112 S.Ct. 2130.
Iii addition, the Plaintiffs maintain that they have standing to challenge HB 663 as overbroad or facially invalid “even if [they] have not themselves suffered or been threatened with actual injury.” This argument simply lacks merit. Bringing an overbreadth claim does not give the Plaintiffs’ carte blanche to maintain a suit in federal court. When considering these claims, courts indeed relax certain standing doctrines because of the potential for an unconstitutionally over-broad law to “chill” protected speech— that is, the “judicial prediction or assumption that the statute’s very existence may cause others before the court to refrain from constitutionally protected speech -or expression.” Prime Media, 485 F.3d at 349 (quoting Virginia v. Am. Booksellers Ass’n, 484 U.S. 383, 392-93, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)); see also Savage v. Gee, 665 F.3d 732, 740 (6th Cir. 2012). But this exception applies only to the prudential standing doctrines, such as the prohibition on third-party standing, and not to those mandated by Article III itself, such as the injury-in-fact requirement. Prime Media, 485 F.3d at 350; see also Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (noting that injury in fact, causation, and redress-ability form “the irreducible constitutional minimum of standing”). Therefore, “Allegations of a subjective ‘chill’ are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.” Parsons, 801 F.3d at 711 (quoting Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). As discussed above, the Plaintiffs have not satisfied the injury-in-fact requirement. In their complaint, they claim that HB 663 “chills the speech of those participants or former participants in Ohio lethal injection executions” who might have come to disapprove of the death penalty. Whether or not this is the case, it constitutes only an allegation of a subjective chill, which is insufficient to satisfy Article III. See id.
Therefore, the Plaintiffs lack standing to bring their Free-Speech and Prior-Restraint Claims.
B.
The Plaintiffs also argue that the district court erred in dismissing their Right-of-Access-to-Government-Proceedings Claim. As a general matter, they claim that the First Amendment prevents state actors from removing from the public domain information that “pertains to a government proceeding historically open to the public and for which public access plays a significant positive role in the functioning of that process.” According to the Plaintiffs, an execution is such a proceed[1] *418 ing. Nonetheless, the Plaintiffs have failed to state a valid claim.
The Supreme Court’s decision in Houchins v. KQED, Inc., 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), sets the baseline principle for First Amendment claims seeking access to information held by the government. S.H.A.R.K. v. Metro Parks Serving Summit Cty., 499 F.3d 553, 559 (6th Cir. 2007); see also United States v. Miami Univ., 294 F.3d 797, 820 (6th Cir. 2002). Houchins recognized that “[t]he Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act,” and “[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government’s control.” 438 U.S. at 14-15, 98 S.Ct. 2588 (plurality opinion).
An exception to Houchins’s general rule exists. In a line of cases beginning with Richmond Newspapers v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court has recognized a right of access to certain criminal proceedings and the documents filed in those proceedings. This court has extended this right of access to civil trials, Brown & Williamson Tobacco Corp. v. F.T.C., 710 F.2d 1165, 1178 (6th Cir. 1983), and plea agreements, United States v. DeJournett, 817 F.3d 479, 484-85 (6th Cir. 2016). And it has used the Richmond Newspapers framework to analyze whether a right of access exists for university disciplinary proceedings, United States v. Miami Univ., 294 F.3d 797 (6th Cir. 2002), documents related to the issuance and execution of a search warrant, In re Search of Fair Fin., 692 F.3d 424 (6th Cir. 2012), and deportation proceedings, Detroit Free Press v. Ashcroft, 303 F.3d 681 (6th Cir. 2002).
To be sure, this court has stated that the Richmond Newspapers standard could be used “to determine whether a First Amendment right of access exists in a wide variety of other contexts,” Fair Fin., 692 F.3d at 429, but this pronouncement was dicta. And, while Detroit Free Press “question[ed] the vitality of the standard articulated in Houchins,” it only did so “with respect to cases such as the one presently before [the court]”—a request for public access to deportation proceedings. 303 F.3d at 694-95. The opinion then hedged on Houchins, finding that it may still be good law but that it did not apply to “quasi-judicial government administrative proceeding^].” Id. at 696. Since Detroit Free Press, this court has treated Houchins as good law, see S.H.A.R.K., 499 F.3d at 559—which, of course, it is, having never been overruled by the Supreme Court, see Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997).
In cases similar to the one at bar, other circuits have engaged in a Richmond Newspapers analysis, but none of these decisions provides particularly strong support for doing so-here. In Zink v. Lombardi, the Eighth Circuit applied the “experience and logic” test, but it did so only “for the sake of analysis.” 783 F.3d 1089, 1112 (8th Cir.) (per curiam), cert. denied, — U.S.-, 135 S.Ct. 2941, 192 L.Ed.2d 976 (2015). It did not decide whether the standard applied to the claims at issue. Similarly, in Wellons v. Commissioner, Georgia Department of Corrections, the Eleventh Circuit nominally applied the “experience and logic” test, but it did so only to address the.question as framed by the plaintiffs in that case. 754 F.3d 1260, 1266 (11th Cir.) (per curiam), cert. denied sub nom. Wellons v. Owens, — U.S.-, 134 S.Ct. 2838, 189 L.Ed.2d 803 (2014). The only decision to clearly find that the Richmond Newspapers framework applied under similar circumstances was summarily vacated *419 by a unanimous Supreme Court. See Wood v. Ryan, 759 F.3d 1076, 1081 (9th Cir.), vacated, — U.S.-, 135 S.Ct. 21, 189 L.Ed.2d 873 (2014). Our decision is not strictly controlled by this summary decision, as the Supreme Court found only that the district court did not abuse its discretion in denying a motion for a preliminary injunction and did not decide whether the plaintiff failed to state a claim for access to government records. Ryan v. Wood, — U.S. -, 135 S.Ct. 21, 21, 189 L.Ed.2d 873 (2014) (mem.).[10] Nonetheless, a unanimous Supreme Court saw fit to summarily vacate—without briefing or argument—the Ninth Circuit’s determination that a death-row inmate seeking state-held information related' to the method of his execution “raised serious questions” as -to whether he would prevail- on a First Amendment claim. Wood, 759 F.3d at 1086. This ruling raises grave doubts as to whether such a claim is legally cognizable in the first place.
Therefore, we, like the Eighth Circuit, find the dissent in Wood to be persuasive. See Zink, 783 F.3d at 1113. The dissent found that the plaintiffs “d[id] not actually assert a right of access to a governmental proceeding” as recognized by Richmond Newspapers and its progeny. Wood, 759 F.3d at 1092 (Bybee, J., dissenting). It recognized that this right includes a related right to ■ access documents “filed” in those proceedings, but also noted that “[the] right does not extend to every pieee of information that conceivably relates to a governmental proceeding, even if the governmental proceeding is itself open to the public.” Id. Ultimately, Judge Bybee reasoned that this latter category of information is precisely what the plaintiffs sought and identified Houchins as supplying the proper rule of decision. Id. at 1093.
It is worth noting that we have neither adopted nor rejected the Ninth Circuit's position in California First Amendment Coalition v. Woodford, 299 F.3d 868, 877 (9th Cir. 2002), that the public has a right of access to executions under Richmond Newspapers. We need not resolve that question today. The Plaintiffs do not seek public access to Ohio executions. Rather, their Right-of-Aceess-to-Government>-Proeeedings Claim is premised on an assertion of a First Amendment right to “government information” that “pertains to a government proceeding.” Neither this court nor the Supreme Court has ever recognized a right so broad. While the public’s right of access under the First Amendment covers certain records filed in and transcripts of a qualifying government proceeding, see DeJournett, 817 F.3d at 484, it does not follow that this right covers all information related to the proceeding. The right of access to government proceedings “is not a tool for judges to pry open the doors of state and federal agencies because they believe that public access to this type of information would be a good idea. It is a qualified right to certain ‘proceedings and documents filed therein’ and nothing more.” Wood, 759 F.3d at 1092-93 (Bybee, J., dissenting). The information HB 663 prevents from disclosure is neither information of the type filed in a government proceeding nor its functional equivalent; the Plaintiffs simply seek information related to Ohio executions. Under these circumstances, Houchins’s general rule applies. See id. at 1093-94.
Finding that the Plaintiffs have stated a valid claim under Richmond Newspapers *420 would, of necessity, disregard the general applicability of Houchins and represent a significant—and unwarranted—expansion of the right of access under the First Amendment as developed by the Supreme Court and our prior decisions. Therefore, we conclude that the Plaintiffs have failed to state a claim for a violation of their right of access to government proceedings.
C.
On appeal, the Plaintiffs contend that the district court erred in dismissing their Equal-Protection, Due-Process, and Right-of-Court-Access Claims. As the basis for these claims, the Plaintiffs argue that HB 663 prevents them from bringing an effective challenge to Ohio’s execution procedures. Specifically, they maintain that HB 663 “denies [them] an opportunity to discover and litigate non-Mvolous claims.” But no constitutional right exists to discover grievances or to litigate effectively once in court. Lewis v. Casey, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); Hill v. Dailey, 557 F.3d 437, 439 (6th Cir. 2009). The Plaintiffs have not pointed to any decision recognizing claims similar to the ones they propose. In fact, federal courts have repeatedly rejected such theories. See Zink, 783 F.3d at 1108-09; Wellons, 754 F.3d at 1267; Sepulvado v. Jindal, 729 F.3d 413, 420 (5th Cir. 2013); Williams v. Hobbs, 658 F.3d 842, 852 (8th Cir. 2011); Giarratano v. Johnson, 521 F.3d 298, 306 (4th Cir. 2008); see also Jones v. Comm’r, Georgia Dep’t of Corr., 812 F.3d 923 (11th Cir. 2016) (Marcus, J., concurring in the denial of rehearing en banc) (rejecting an “abstract and inchoate due process right to discover the identity of the source of the drugs and the name of the executioner so that [an inmate] may challenge [a state’s] execution protocol”). Therefore, the district court did not err in dismissing these claims.[11]
D.
The Plaintiffs also maintain that, “[b]ecause the district court erred in dismissing the [c]omplaint, it also erred in denying as moot the motions for preliminary injunction and expedited discovery.” As discussed above, however, the case was properly dismissed. When ruling on a matter disposes of an action in its entirety, a district court is generally correct in denying all other pending motions as moot. See, e.g., Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 616 (6th Cir. 2002). Therefore, remand is not necessary to address the now-moot matters.
AFFIRMED.
DISSENT

. Section 149.43 specifically provides:
(A) As used in this section:
(1)"Public record” means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, and records pertaining to the delivery of educational services by an alternative school in this state kept by the nonprofit or for-profit entity operating the alternative school pursuant to section 3313.533 of the Revised Code. "Public record” does not mean any of the following:
[[Image here]]
(cc) Information and records that are made confidential, privileged, and not subject to disclosure under divisions (B) and (C) of section 2949.221 of the Revised Code.
In relevant part, § 2949.221 provides:
(B) If, at any time prior to the day that is twenty-four months after the effective date of this section, a person manufactures, compounds, imports, transports, distributes, supplies, prescribes, prepares, administers, uses, or tests any of the compounding equipment or components, the active pharmaceutical ingredients, the drugs or combination of drugs, the medical supplies, or the medical equipment used in the application of a lethal injection of a drug or combination of drugs in the administration of a death sentence by lethal injection as provided for in division (A) of section 2949.22 of the Revised Code, notwithstanding any provision of law to the contrary, all of the following apply regarding any information or record in the possession of any public office that identifies or reasonably leads to the identification of the person and the person's participation in any activity described in this division:
(1) The information or record shall be classified as confidential, is privileged under law, and is not subject to disclosure by any person, state agency, governmental entity, board, or commission or any political subdivision as a public record under section 149.43 of the Revised Code or otherwise.
(2) The information or record shall not be subject to disclosure by or during any judicial proceeding, inquiry, or process, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code,
(3) The information or record shall not be subject to discovery, subpoena, or any other means of legal compulsion for disclosure to any person or entity, except as described in division (B)(4) of this section or in section 2949.222 of the Revised Code.
(4)(a) If the information or record pertains to the manufacture, compounding, importing, transportation, distribution, or supplying of any of the items or materials described in division (B) of this section, the person or entity that maintains the information or record shall disclose the information or record to the Ohio ethics commission and the commission may use the information or record, subject to division (B)(1) of this section, only to confirm the following:
*411 (i) That the relationship between the person and the department of rehabilitation and correction is consistent with and complies with the ethics laws of this state;
(ii) That at the time of the specified conduct, the person has all licenses required under the laws of this state to engage in that conduct and the licenses are valid, (b) If the Ohio ethics commission receives any information or record pursuant to division (B)(4)(a) of this section, the commission shall complete its use of the information or record for the purposes described in that division within fourteen days of its receipt and shall promptly report its findings to the director of rehabilitation and correction.
(C)(1) If, at any time prior to the day that is twenty-four months after the effective date of this section, an employee or former employee of the department of rehabilitation and correction or any other individual selected or designated by the director of the department participates or participated in the administration of a sentence of death by lethal injection, as provided for in division (A)of section 2949.22 of the Revised Code, subject to division (C)(2) of this section and notwithstanding any other provision of law to the contrary, the protections and limitations specified in divisions (B)(1), (2), and (3) of this section shall apply regarding any information or record in the possession of any public office that identifies or reasonably leads to the identification of the employee, former employee, or other individual and the employee's, former employee's, or individual's participation in the administration of the sentence of death by lethal injection described in this division.
(2) Division'(C)(1) of this section does not apply with respect to information or a record that identifies or reasonably leads to the identification of the director of rehabilitation and correction or the warden of the state correctional institution in which the administration of the sentence of death takes place.

. Section 2949.222 provides in full:
(A) As used in this section, “seal a record” means to remove a record from the máin file of similar records and to secure it in a separate-file that contains only sealed records accessible only to the court.
(B) The, court promptly shall order the immediate sealing of records containing information described in division (B) or (C) of section 2949.221 of the Revised Code and the person’s participation in any activity described in the particular division, whenever the records come into the court’s possession.
(C) If a record containing information described in division (B) or (C) of section 2949.221 of the Revised Code and-the person's participation in any activity described in the particular division, is subpoenaed or requested by a court order, the director of rehabilitation find correction shall provide the record. If the' court determines that the record is necessary for just adjudication, the court shall order the director to appear at a private hearing with a copy of the record and any other relevant evidence. The information is not otherwise subject to disclosure unless the court, through clear and convincing evidence presented in the private hearing, finds that the person whose identity is protected appears to have acted unlawfully with respect to the person’s involvement in the administration of a lethal injection as contemplated by the first paragraph of division (B) and by division (C)(1) of section 2949.221 of the Revised • Code.

. Section 2949.221(E) provides:
If a person or entity that, at any time pri- or to the day that is twenty-four months after the effective date of this section, participates in, consults regarding, performs any function with respect to, including any activity described in division (B) of this section, or provides any expert opinion testimony regarding an execution by lethal injection conducted in accordance with division (A) of section 2949.22 of the Revised Code is licensed by a licensing authority, notwithstanding any provision of law to the contrary, the licensing authority shall not do any of the following as a result of that participation, consultation, performance, activity, or testimony by the person or entity:
(1) Challenge, reprimand, suspend, or revoke the person’s or entity’s license;
(2) Take any disciplinary action against the person or entity or the person’s or entity’s licensure.

. Section 2949.221(F) provides in full:
A person may not, without the approval of the director of rehabilitation and correction, knowingly disclose the identity and participation in an activity described in the particular division of any person to whom division (B) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division or of an employee, former employee, or other individual to whom division (C)(1) of this section applies and that is made confidential, privileged, and not subject to disclosure under that division. Any person, employee, former employee, or individual whose identity and participation in a specified activity is disclosed in violation of this division has a civil cause of action against any person who discloses the identity and participation in the activity in violation of this division. In a civil action brought under this division, the plaintiff is entitled to recover from the defendant actual damages, punitive or exemplary damages upon a showing of a willful violation of this division, and reasonable attorney’s fees and court costs.

.This action- was initially joined by a fourth inmate, Grady Brinkley, but he did not participate in this appeal.

. The court also addressed claims that the Plaintiffs made under the Ohio Constitution and found that they lacked merit. Phillips, 92 F.Supp.3d at 717-18. On appeal, the Plaintiffs do not appear to challenge this determination, and, in any event, they have not raised arguments particular to the Ohio Constitution.

. The Plaintiffs claim that the Licensure-Im-munity Provision prevents "any efforts to persuade licensing authorities to take disciplinary action against those participants who are licensed professionals for ethical violations or other reasons.” This is simply not the case. The provision does not prevent individuals from engaging in speech to licensing authorities; rather, licensing authorities cannot take disciplinary action regardless of these overtures. See Ohio Rev. Code § 2949.221(E).

. Because the Civil-Action Provision appears to grant a private right of action to death-penalty participants whose identity is disclosed, see Ohio Rev. Code § 2949.221(F), it is debatable whether the Plaintiffs could avail themselves of Susan B. Anthony List's standard in seeking pre-enforcement review, see MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-29, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (“[W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat— for example, the constitutionality of a law threatened to be enforced.”). But because the Plaintiffs cannot establish standing even under this more favorable standard, we need not resolve the question.

. The Plaintiffs also argue that they have suffered injury because they, or others acting on their behalf, cannot attempt to persuade drug manufacturers to cease participation in Ohio's lethal injection process without access to the information HB 663 prevents from being disclosed. As discussed above, this injury is not the result of a "rule, policy[,] or law” that "has explicitly prohibited or proscribed conduct on the part of the [P]laintiff[s]” and therefore does not provide standing for the Plaintiffs’ Free-Speech Claim. See Parsons, 801 F.3d at 711. Nonetheless, this injury does provide standing for their Access-to-Government-Proceedings Claim. The Plaintiffs essentially argue that they are entitled to know the identity of the drug manufacturers, that HB 663 prevents them from obtaining this information, and that access to the manufacturers’ identity would remedy their injury. This is sufficient to meet all three standing prongs for this claim. See Fisher v. King, 232 F.3d 391, 396 n.5 (4th Cir. 2000).

. Specifically, the Court reversed the Ninth Circuit's finding that the plaintiff "raised serious questions as to whether a First Amendment right, in the context of a public execution! ], attaches to the specific information he requested].” Wood, 759 F.3d at 1086.

. In their reply brief, the Plaintiffs also argue that they have stated a plausible Equal-Protection claim because HB 663 "discriminates based on the exercise of a fundamental right,” namely “[protected speech by lethal injection opponents.” As discussed above, the Plaintiffs have not alleged that they themselves have been or will likely be prevented from engaging in protected speech by HB 663, Therefore, it is doubtful that they have standing to pursue such a claim. Nonetheless, we need not resolve this issue because the Plaintiffs have waived their argument by failing to raise it in the opening brief. United States v. Hendrickson, 822 F.3d 812, 830 (6th Cir. 2016).

. Plaintiffs have also alleged that "in its practical operation" the civil penalty provision "goes even, beyond mere content discrimination, to actual viewpoint discrimination.” Sorrell v. IMS Health Inc., 564 U.S. 552, 565, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011). Even if HB 663 were not content based on its face, these allegations would be sufficient to survive a motion to dismiss. (See R. 1, PagelD 3, 30, 39-40, 49-50, ¶¶ 3, 93, 106(d)-(e), 136.)