JANE B. STRANCH, Circuit Judge,
dissenting.
This is another in a series of cases litigated against the backdrop of Ohio’s failure to properly carry out the death sentences of its prisoners, and includes a case in which I previously dissented. Phillips v. *241 DeWine, 841 F.3d 405, 420-33 (6th Cir. 2016). In Phillips — a constitutional challenge to Ohio Revised Code §§ 2949.221-.222, Ohio’s lethal-injection secrecy statute — the majority dismissed the Plaintiffs’ claims for lack of standing and failure to state a claim. 841 F,3d at 410. In this suit, however, the Plaintiffs challenge not the secrecy statute itself, but the district court’s protective, order.
The Plaintiffs and Defendants agree that the Ohio secrecy statute does not control this federal discovery issue. The purposes and particulars of discovery under Rule 26, and the liberal treatment that such discovery must be accorded, govern this case. In discussing the broad scope of discovery authorized by the federal rules, the Supreme Court has explained that “[mjutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession.” Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The question before us is whether the protective order issued by the district court satisfies the principles of discovery and the requirements of Rule 26.
The order extends broadly to cover any information “that identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs” and any persons or entities “who manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution.” In re Ohio Execution Protocol Litigation, 2015 WL 6446093, at *9 (S.D. Ohio Oct. 26, 2015). The majority upholds the order’s issuance as in compliance with Rule 26 and, I think appropriately, leaves-interpretation of the specifics to the court below. I would not uphold issuance of the order because the record establishes that the district court failed to follow the proscriptions of discovery and the applicable federal rules, I therefore respectfully dissent.,
I. The Protective Order
To sustain a protective order under Rule 26(c)(1), the moving party must specify one of the harms listed in the rule, and must illustrate that enumerated harm “with a particular and specific demonstration of fact, as distinguished from-stereotyped and conclusory statements.” Serrano v. Cintas Corp., 699 F.3d 884, 901 (6th Cir. 2012) (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). The party must further show that the harm outweighs the need for the requested information. Id. The enumerated harms available to the Defendants are annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). “The burden of establishing good cause ... rests with the movant” who must “articulate specific facts showing ‘clearly defined and serious injur/ resulting from the discovery sought.” Nix v. Sword, 11 Fed.Appx. 498, 500 (6th Cir 2001) (quoting Avirgan v. Hull, 118 F.R.D. 252, 254 (D.D.C. 1987)); see also 8A Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 2036 (3d ed. 2016) (“To justify restricting discovery, the harassment or oppression should be unreasonable — ”).
The district court concluded that disclosing the identities of those entities and persons involved in the acquisition, of execution drugs and related materials would cause an undue burden on the Defendants by subjecting them to the risk of harm, *242 violence, and harassment and by making it difficult for them to carry out executions. I find the justifications offered by Defendants to be too speculative to validate this protective order under Rule 26(c)(1).
A. The risk of harm, violence, and harassment
At a limited hearing, the district court heard testimony from four witnesses regarding the potential risk stemming from the requested disclosures. The Defendants’ security and threat assessment expert, J. Lawrence Cunningham, concluded that a “substantial risk of threats or harassment exists absent confidentiality,” 2015 WL 6446093, at *2, while the Plaintiffs expert in the same field, Thomas R. Parker, found that there was no substantial risk, id. The district court determined that the experts largely “cancelled one another out” and that the “assertions of burdens or prejudice connected to disclosure are largely speculative or conelusory, if not outright hyperbolic.” Id.
Cunningham’s testimony was undoubtedly speculative. His methods for determining whether there was a security risk consisted mainly of surfing the internet, and attempting to extrapolate the existence of potential threats in the death penalty arena by looking at advocacy regarding other issues: abortion, animal rights, and the morning-after pill. R. 548, PagelD 15136-37, 15167-68 (noting that while it “would be nice to have a direct threat,” he needed to be creative and look at every possibility). Cunningham himself stated that he was unaware of any known threat against anyone involved in implementation of the death penalty in Ohio, and unaware of threats against any compounding pharmacy that supplies Ohio. The Defendants offered no evidence that any Ohio pharmacy or pharmacist had ever been threatened, harmed, or harassed as a result of providing execution drugs. As Sister Helen Prejean pointed out in her testimony for the Plaintiffs, anti-death penalty advocates seek to preserve the lives of even those convicted of serious crimes — hardly a group of activists likely to revert to violence against pharmacy employees. R. 548, PagelD 15149 (“No violence against anyone because our whole point is to try to show that using violence to try to solve such problem doesn’t solve anything.”).
This leaves only one document relied on by the district court — a single email produced by the Defendants, sent by a citizen to a pharmacy in Oklahoma. The court extrapolated that a “reasonable pharmacy owner or compounder” would likely feel burdened by receiving such an email. 2015 WL 6446093, at *3. But that email is too attenuated from any specific, enumerated harm applicable to this case. The record reveals no evidence that any such party in Ohio received a message of this kind, or that any similar threat had ever been communicated. The Defendants’ evidence was simply insufficient to establish a harm as required under Rule 26(c)(1) with “a particular and specific demonstration of fact, as distinguished from stereotyped and con-elusory statements.” See Serrano, 699 F.3d at 901.
B. Ohio’s ability to continue carrying out executions
Without evidence of any actual threat to support issuing the order, the district court determined that Ohio would be unable to carry out executions unless it could maintain confidentiality regarding its sources for the execution drugs. The majority concludes that the Defendant’s ability to cany out executions is the reason Ohio moved for protection — the “elephant in the room.” Defendants, however, fail to show that they even raised this argument *243 or that providing the disclosures would actually prevent executions.
Defendants never alleged that they would be unable to carry out executions; they discussed this issue only in the context of their unsuccessful attempt to invoke a privilege under the Ohio secrecy statute. Even if it had been raised, that would not relieve the Defendants of their burden to produce specific evidence of their need for a protective order under the facts of this case. References to the passage of Ohio’s secrecy statute and the reasons supporting its passage are insufficient to satisfy Defendants’ burden.
The Defendants sought to rely on then-production of a privilege log the night before the evidentiary hearing that identifies six persons or entities that had applied for statutory protection from disclosure under the Ohio secrecy statute. The district court found this to be informative of whether there were entities that sought anonymity but concluded that “some entities might apply for protection even if they might assist Ohio even if confidentiality were not obtained.” 2015 WL 6446093, at *3. As the district court recognized, a desire for secrecy does not show an inability to carry out executions without it. It does not satisfy Defendants’ burden merely to make the court aware of the fact that some entities prefer anonymity. There was simply no evidence in the record showing that compounding pharmacies would not provide execution drugs to Ohio absent their newly-granted anonymity, or that the risk of threats, intimidation or harassment would prevent suppliers from taking part in executions.
Indeed, there was no need for the district court’s “speculation” about the harm, 2015 WL 6446093, at *4, because courts have a number of methods to protect those involved during the taking of evidence. For example, execution team members could have provided the information necessary for the court to make an informed determination regarding the order by testifying behind a screen or by submitting sealed affidavits. It was not only unnecessary for the court to engage in “estimating probabilities,” id., it was also inappropriate — the burden of establishing good cause by proving specific facts rests on the Defendants. See Nix, 11 Fed.Appx. at 500. In sum, the information in this record was speculative and did not show a “clearly defined” injury, which is essential to satisfy the requirements of Rule 26(c)(1). See id.
C. The broad protective order prevents relevant and necessary discovery
The Plaintiffs argue that the protective order “effectively cuts off virtually all discovery, related to Ohio’s execution procedures” and that the information is relevant and necessary for their claims. The order, in shielding the identity of drug sources, prevents the Plaintiffs from knowing a vast array of information: technician and execution team’s qualifications, the means by which Ohio obtains the lethal-injection drugs, whether Ohio has complied with the manufacturing process, among other evidence. All in all, the protective order prevents the Plaintiffs from determining whether the Defendants are fulfilling their duty to provide humane and constitutional executions to inmates with fast-approaching execution dates.
The Defendants argue that performing their own tests on the drugs for identity and potency and reporting those results to the Plaintiffs is the “most reliable means of assessing their quality, reliability, and efficacy.” The Plaintiffs disagree, illustrating their concerns with a recent situation in which drugs that were sold as sterile and compliant with governing regulations by an independent lab, New England Compounding Center, were actually tainted *244 and resulted in a meningitis outbreak that killed 16 people and injured 153, in Tennessee alone. See Timothy W. Martin, Tainted Drug Passed Lab Test, Wall Street Journal, Oct. 24, 2012; Kurt Eichenwald, Killer Pharmacy: Inside a Medical Mass Murder Case, Newsweek, April 16, 2015. Comparable concerns are raised by Ohio’s prior assurances concerning the drugs to be used to execute Dennis McGuire — a protocol that resulted in a 25-minute long botched execution. See Erica Goode, After a Prolonged Execution in Ohio, Questions Over 'Cruel and Unusual’, N.Y. Times, January 17, 2014, at A12.
The Plaintiffs argue that allowing Defendants to test their lethal-injection drugs is insufficient on its own because, among other reasons, that prevents Plaintiffs from testing for the presence of contaminants, from obtaining necessary information about the compounder’s processes, equipment, and practices, and from verifying the results of the secret tests. The Plaintiffs provide a lengthy list of the kinds of evidence the order will keep from them, including investigations into botched executions, non-compliance with written protocol, documentation related to execution drugs, information regarding execution team members and their qualifications, materials related to other individuals involved in executions, execution training records, and more. In sum, they do not have the information they need to ensure that the testing is adequate or that the executions will be carried out in a constitutional manner. The information barred by the order is, to say the least, highly relevant and necessary for their claims. Whatever burden there is on Defendants could have been reduced or eliminated with a narrow protective order limiting disclosure to counsel and experts.
II. Conclusion
The Defendants failed to show that they would suffer a specific, enumerated harm under Rule 26(c)(1), and certainly not one that could outweigh the Plaintiffs’ need for the withheld information. Because the record establishes that the district court’s order did not follow the principles governing federal discovery as well as the specific requirements of Rule 26, I respectfully dissent from the decision to uphold issuance of the order.
The parties have also presented a number of disputes about the scope and application of certain provisions of the order. Application issues include matters such as discovery that is now withheld but was previously routinely available to Plaintiffs. Disputes on scope include matters such as Plaintiffs’ objection that Defendants have expansively interpreted their rights under the order to refuse to provide information during the time frame before the drug protocol was amended on October 7, 2016. Simply put, a number of difficult disputes remain. Our remand entrusts the court below with interpreting the provisions and scope of the order and resolving those disputes.