18 F.3d 348
 UNITED STATES of America, Plaintiff-Appellee,
v.
STATE OF MICHIGAN; John Engler; Michigan Department of
Corrections; Gwen Andrew; Thomas Eardley; Duane L.
Waters; Don P. LeDuc; Kenneth L. McGinnis; Dan Bolden;
John Jabe; Pamela Withrow; John Hawley; James Pogats;
Jack Bergman, Defendants-Appellants.
 Nos. 93-1222, 93-1810.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 25, 1994.
Decided March 4, 1994.
 
 William L. Fette, American Civil Liberties Fund of Michigan, Kalamazoo, MI, Delmer C. Gowing, III, Ocean Ridge, FL, Elizabeth R. Alexander, Chief Staff Counsel, Washington, DC, Alan M. Gershal, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, MI, for Gary Knop.
 Patricia A. Streeter, Detroit, MI, William L. Fette, American Civil Liberties Fund of Michigan, Kalamazoo, MI, Elizabeth R. Alexander, Chief Staff Counsel, Washington, DC, for remaining amici curiae.
 Lisa J. Stark (argued & briefed), Susan D. Carle, U.S. Dept. of Justice, Civ. Rights Div., Appellate Section, Arthur E. Peabody, Jr., Chief, William Bradford Reynolds, Asst. Atty. Gen., U.S. Dept. of Justice, Sp. Litigation Section, Washington, DC, John A. Smietanka, U.S. Atty., Office of the U.S. Atty., Grand Rapids, MI, for U.S.
 Barbara A. Schmidt, Susan Przekop-Shaw (argued & briefed), Office of the Atty. Gen., Corrections Div., Lansing, MI, for State of Mich. in No. 93-1222.
 Frank J. Kelley, Office of Atty. Gen., Appellate Div., Barbara A. Schmidt, Susan Przekop-Shaw (argued & briefed), Office of the Atty. Gen., Corrections Div., Lansing, MI, for defendants-appellants in No. 93-1810.
 Before: KEITH and RYAN, Circuit Judges, and JOHNSTONE, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The United States filed this case to require the State of Michigan to bring the conditions in several Michigan prisons up to constitutional standards. In 1984, the United States and Michigan agreed to a consent decree, which was entered by the district court. In April 1992, the parties filed a joint motion requesting that the court dismiss portions of the consent decree because Michigan had substantially complied with the terms of the decree and because all but one of the disputed conditions had been brought into compliance with constitutional standards. The parties requested that the consent decree remain in place with respect to mental health issues, which were still in dispute. The district court refused to adopt the parties' stipulation in its entirety, and the State of Michigan appeals that decision.
 
 
 2
 The issue for decision is whether the district court was bound to act in conformance with the stipulation of the parties. We hold that it was not, and affirm.
 
 I.
 
 3
 This case has already made one trip to the Sixth Circuit, and the general background facts are succinctly set forth in this court's prior opinion. We will not repeat them here. See United States v. Michigan, 940 F.2d 143 (6th Cir.1991). Instead, we recount only the facts necessary to our decision.
 
 
 4
 The consent decree entered by the court sets forth broad, generalized goals for Michigan to meet in each of five areas. The decree also references a "state plan" for achieving these goals:
 
 
 5
 H. Defendants have developed their own comprehensive plan, entitled "State Plan for Compliance" (State Plan), specifying measures they intend to take at [the subject prisons] in order to assure constitutional conditions therein, and to address a number of other matters designed to improve conditions of confinement. Defendants intend to fully implement the State Plan unless implementation is excused or modified in accordance with the terms of this Decree. A copy of the State Plan is attached to this Decree as Exhibit A.
 
 
 6
 I. Implementation of the various provisions of the State Plan will be adequate to bring Defendants into full compliance and thereby satisfy the terms and provisions of this Decree. The Court shall be advised as to each failure to comply with the provisions of the State Plan and, on request of either party or on the Court's own motion, a hearing may be held as to the constitutional implications of said failure and Defendants' non-compliance. Nothing in this Decree shall be interpreted as requiring Defendants to specifically comply with any State law, or any other provision of the State Plan that does not implicate constitutional rights of inmates.
 
 
 7
 J. Defendants shall report to the Court and to the United States any time they intend to modify their Plan, and shall advise the Court and the United States, by legal memoranda, whether the modification sought raises constitutional issues.
 
 
 8
 After several years of monitoring, compliance hearings, and an appeal to this court, the parties filed a joint motion on April 29, 1992, to dismiss portions of the consent decree. In the motion, the parties stated that they "agree that Defendants are in substantial compliance, and have achieved the goals of the Decree by assuring at least constitutional conditions" with respect to all disputed conditions except mental health care. According to paragraph R of the consent decree, however, termination was an all or nothing matter:
 
 
 9
 R. After Defendants have complied with all of the terms of this Decree, Defendants may apply to terminate the jurisdiction of this Court.
 
 
 10
 Consequently, the joint motion also requested that the district court amend paragraph R to read:
 
 
 11
 Termination of the Court's jurisdiction may be sought by either party as to any provision of the Decree when Defendants are in compliance with constitutional requirements.
 
 
 12
 The joint motion was accompanied by a stipulation to dismiss all issues except those relating to the mental health of the inmates.
 
 
 13
 The district court entered its first opinion and order with respect to the joint motion on July 2, 1992. The district court refused to adopt the amendment proposed by the parties to the termination clause of the decree. While the court was willing to dismiss portions of the decree on a piecemeal basis, it felt that the language proposed by the parties substituted compliance with the Constitution for compliance with the consent decree. The court's order vacated paragraph R of the decree and allowed piecemeal dismissal of the decree provided the State complied with the pertinent terms of the decree.
 
 
 14
 The court next refused to dismiss any portion of the decree without receiving an updated report on the status of compliance. To that end, the court ordered a review by the independent expert assigned to monitor the consent decree. The expert was directed to develop a list of the various provisions of the decree and determine whether each provision had been complied with. The expert was also asked to determine the relationship, if any, between provisions for which there was compliance and those where compliance had not been achieved.
 
 
 15
 The court's order explicitly declined to dismiss the portions of the consent decree related to medical care because the court found that these provisions were inextricably linked to the mental health requirements such that the two should be reviewed together. The court also specified that the first round of compliance investigations should relate only to the Marquette Branch Prison and the Michigan Reformatory. The court judicially noticed that the State was in the process of implementing the final round of changes at the State Prison of Southern Michigan required by the consent decree in a prisoner civil rights case known as Hadix v. Johnson, 694 F.Supp. 259 (E.D.Mich.1988). The court felt that the implementation of these requirements might warrant dismissal of various provisions of the United States v. Michigan decree in favor of the Hadix decree. The court concluded its order by stating:
 
 
 16
 Following receipt of the Independent Expert's Report and the comments by the parties and amici, and following a hearing if necessary, the Court will enter an order dismissing jurisdiction over provisions where compliance has been achieved. If provisions remain where compliance has not been achieved, the Court will entertain motions with respect to those provisions, which may include motions to modify the Decree based on the parties' positions concerning constitutional requirements.
 
 II.
 
 17
 With this background in mind, we now reach the subject of the first notice of appeal to this court, an appeal from a December 1, 1992, opinion and order of the district court granting portions of the parties' joint motion and deferring decision on the balance of the motion. The district court issued this opinion and order after receiving the requested reports from the expert. The court's opinion addressed the terms of the state plan attached to the consent decree. The court found that there had been compliance with selected portions of the state plan concerning 1) sanitation, safety, and health; 2) fire safety; and 3) overcrowding and protection from harm, and therefore "dismissed" those portions of the state plan.
 
 
 18
 The court declined, however, to dismiss any of the portions of the decree concerning access to courts. The court believed that a new state plan was required in light of this court's decisions in the consolidated appeal of Knop v. Johnson and Hadix v. Johnson, 977 F.2d 996 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). In that opinion, this court held that meaningful access to the courts may require more than simply law books and simplified pleading forms. Thus, the district court found that the state plan portions of the decree concerning access to the courts no longer complied with the relevant constitutional requirements. The court also ordered further reports on portions of the consent decree which it did not dismiss. The State of Michigan appealed.
 
 
 19
 A second notice of appeal was also filed with respect to a March 30, 1993, order entered by the district court. That order, however, has no substantive effect for reasons we need not detail. Accordingly, we follow the parties' lead in treating the two orders as one. All of the issues raised in this appeal are questions of law; therefore, we review the decisions of the district court de novo.
 
 III.
 
 20
 Although Michigan identifies several different legal theories on appeal, it essentially is challenging the district court's authority to refuse to implement the parties' stipulation to dismiss the majority of the consent decree. A consent decree is a unique legal document. This court has described it as follows:
 
 
 21
 It is at once "a voluntary settlement agreement which could be fully effective without judicial intervention" and "a final judicial order ... plac[ing] the power and prestige of the court behind the compromise struck by the parties."
 
 
 22
 ... Thus, a consent decree is aptly described as "a settlement agreement subject to continued judicial policing."
 
 
 23
 Lorain NAACP v. Lorain Bd. of Educ., 979 F.2d 1141, 1148 (6th Cir.1992) (quoting Williams v. Vukovich, 720 F.2d 909, 920 (6th Cir.1983)), cert. denied, --- U.S. ----, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993).
 
 
 24
 Because the "power and prestige" of the court rests behind a consent decree, a district court is not simply empowered, but is actually obligated, to exercise its independent judgment regarding compliance with a decree. Otherwise, a court would simply become a rubber stamp for the parties, and the policing role of the court would become meaningless. A consent decree is a judgment. The United States and the State of Michigan stipulated to the entry of a consent decree which was then submitted to the district court for approval and for entry of judgment. Once entered, the decree became the court's judgment, subject to its monitoring. Once the jurisdiction of the court has been invoked, that court has an obligation to exercise its jurisdiction meaningfully; it may not blindly defer to the stipulation of the parties. The State contends that it is not arguing for blind acceptance; it concedes that the district court has authority to review the stipulation to determine whether it is unworkable or unconstitutional. We think the district court's authority is greater than that.
 
 
 25
 Under Fed.R.Civ.P. 60(b), a court has the authority to modify a judgment when that judgment has been released or satisfied or for any other reason which makes continuance of the judgment unjust.[1] This authority, however, is discretionary. Necessarily, then, the court must exercise its judgment whether to accede to a stipulation by the parties; a stipulation does not deprive a court of its inherent supervisory authority under Fed.R.Civ.P. 60(b).
 
 
 26
 Moreover, the consent decree itself requires the district court to exercise its judgment concerning compliance with its terms. The decree provides that the district court is to monitor compliance with the state plan attached to the decree and is to consider and rule upon any proposed modifications to that plan. The termination provision of the decree, paragraph R, states that "[a]fter Defendants have complied with all of the terms of this Decree, Defendants may apply to terminate the jurisdiction of this Court." (Emphasis added.) The requirement that Michigan apply to the district court for termination implies that the court is obligated to exercise its judgment and determine whether compliance has been achieved and whether termination is warranted.
 
 
 27
 Michigan also maintains that the district court's jurisdiction under the decree is limited by the Constitution, not by the terms of the state plan. The State contends that the lower court's jurisdiction ceased once the parties stipulated to constitutional compliance. We need not, however, decide this issue. The plain language of the consent decree provides that compliance with the state plan would be considered compliance with the Constitution. Michigan is correct that the consent decree does not explicitly provide that compliance with the state plan is the only means to satisfy compliance with the Constitution. The lower court, however, never took this position.
 
 
 28
 The state plan is an integral and important component of the consent decree. The plan provides a detailed, concrete way to satisfy the broad goals laid out in the decree. The decree requires Michigan to seek the court's approval prior to modifying the plan; specifically, the court must determine whether proposed changes comply with constitutional standards. The record also shows that the compliance hearings monitored implementation of the state plan, as well as compliance with the broad goals of the consent decree.
 
 
 29
 The July 2 order of the district court set forth the procedure the court would follow in addressing the parties' joint motion for dismissal. In that order, the court rejected the termination language proposed by the parties and substituted its own language. The district court felt that, since compliance had always been measured against the state plan, that was the easiest place to begin. The court held that the termination language proposed by the parties did not recognize the significance of the plan component of the decree. The court did not, however, require compliance with all the terms of the plan before it would dismiss any provision of the consent decree. Instead, the court set up a two step procedure. The court would first review compliance under the plan and would dismiss any portions of the decree for which it found compliance. Second, the court would entertain motions regarding the portions of the decree and the plan for which the court did not find compliance. In these motions, the parties could argue the relevant constitutional standards and show that compliance with the full terms of the plan should not be required. This procedure conforms to the modification provisions of the decree and with existing law.
 
 
 30
 If Michigan wishes to argue that the plan goes too far and that constitutional requirements have already been met, it should first raise these issues in the district court, following the procedure provided by that court and the consent decree.
 
 IV.
 
 31
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Edward H. Johnstone, Senior United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Fed.R.Civ.P. 60(b) provides:
 On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, ... or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.