**Fred JOHNSON, Robert Simpson and Terry Troutman, pretrial detainees at the Kent County Correctional Facility, individually and on behalf of all other persons similarly situated, Plaintiffs–Appellees,**

v.

**Philip J. HEFFRON, Sheriff of Kent County; the County of Kent, Michigan, Defendants–Appellants.**

No. 95–1836.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1996.

Decided July 9, 1996.

John E. Meeks, Grand Rapids, MI, Michael O. Nelson (argued and briefed), Legal Aid of Western Michigan, Grand Rapids, MI, for Fred Johnson, Robert Simpson, Terry Troutman.

Teresa S. Decker (argued and briefed), Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Philip J. Heffron, County of Kent, MI.

Before KENNEDY, CONTIE, and NELSON, Circuit Judges.

KENNEDY, Circuit Judge.

In this prisoners' civil rights action, defendants Kent County Sheriff Philip Heffron and Kent County Correctional Facility (defendants collectively called "KCCF"), appeal the denial of their motion to vacate a consent judgment and terminate the court's jurisdiction pursuant to rule 60(b) of the Federal Rules of Civil Procedure.[1] For the following reasons, we **REVERSE** the District Court's denial of defendants' motion.

## I.

Plaintiffs filed this action in 1979 on behalf of pretrial detainees at KCCF alleging that conditions at the jail violated the detainees' constitutional rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution.

In March of 1982, the parties reached an agreement which the District Court entered as a partial consent judgment to remedy a host of problems raised by plaintiffs, including overcrowding. In the midst of this protracted litigation, the District Court identified a "woeful overpopulation" problem at KCCF, with an average daily population of 466 in 1982 in a facility rated for 451 occupants. The facility exceeded maximum capacity for 332 days of that year.

The 1982 consent judgment required, among other things, an average daily general population not to exceed 90% of capacity. In August of 1985, consent judgment was amended to allow for a 95% maximum capacity and to provide for a mechanism which would be triggered by a jail population in excess of this new cap for three consecutive days or more.

In August of 1994, a new and renovated KCCF became fully operational. The number of beds in the facility went from 573 to 994. A 95% capacity formerly resulting in twenty-eight empty beds thereafter resulted in fifty. Following the opening of the renovated facility, defendants moved for dissolution of the consent judgment. The District Court, however, citing *Youngblood v. Dalzell*, 925 F.2d 954, 961 (6th Cir.1991) for the applicable standard, denied the motion, holding that defendants failed to meet the burden of establishing that the goals of the consent decree had been achieved. Specifically, the District Court faulted defendants for their failure to provide important data concerning the overcrowding problem. The District Court pointed out that defendants emphasized the increase in KCCF's capacity but failed to address the possibility that the detainee population may have outpaced the increase in beds.

In May of 1995, defendants came to court again, this time able to show that KCCF detainee population since the 1994 renovation had been under 95% capacity for 98% of the time. Between August of 1994 and May 1, 1995, the data showed that the jail never exceeded 100% capacity but did exceed the 95% cap twice, however, once in September and once in December for three-day periods each time. Defendants therefore offered a stark contrast between current conditions at KCCF and those prior to entry of the consent judgment thirteen years earlier. The District Court nevertheless denied KCCF's renewed motion for relief from judgment, in spite of recognition of KCCF's significant progress on the overcrowding problem.

The District Court found that KCCF, although generally within the 95% limit, hovered perilously close to the maximum allowable capacity and, thus, the court found no "comfortable buffer" sufficient to be able to "conclude that overcrowding would not be likely to occur in the future if the Consent Decree were vacated." In addition, the District Court credited unspecified "reports that the state prison system is expecting to experience some overcrowding in the near future, and plaintiffs assert that the legislature has considered, as one partial solution, a plan to shift some state inmates to the county jails."

---

1. Rule 60(b), entitled Relief from Judgment or Order, reads, in relevant part:

    On motion and upon such terms as are just, the court may relieve a party ... from a final judgment [because] the judgment has been satisfied ... or ... is no longer equitable or [for] any other reason justifying relief from the operation of the judgment.

Finally, the District Court noted that if defendants' position was that they were unlikely in the future to repeat the overcrowding problem of the past, then there would be minimal cost or inconvenience in remaining within the population limit of the consent judgment. Defendants' very motion, therefore, was cause for "suspicion." The District Court questioned KCCF's zeal to dissolve a maximum capacity limit which, KCCF claimed, was unlikely to be exceeded in the near future.

## II.

■ We review the District Court's denial of defendants' renewed rule 60(b) motion for abuse of discretion. *United States v. Michigan*, 18 F.3d 348, 352 (6th Cir.), *cert. denied*, ⸺ U.S. ⸺, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994); *Windsor v. United States Dept. of Justice*, 740 F.2d 6, 7 (6th Cir.1984).

■ We have previously held that the District Court "must determine that the goals of the consent decree have been achieved" before dissolving such a decree. *Dalzell*, 925 F.2d at 961. There appears to be no issue in this case that the goals of the consent decree have been met with the possible exception of the overcrowding problem. Even with regard to overcrowding, there is no issue that KCCF's maximum capacity has not been exceeded for a single day at least since the August 1994 renovation.

The District Court in this case recognized, however, that the goal of the consent decree was not just to meet certain standards at a single point in time but additionally for defendants to have the ability to sustain the desired conditions over time. The District Court was correct in considering not only what defendants had done up to the present, but also future prospects. *See Inmates of Suffolk County Jail v. Rufo*, 12 F.3d 286, 292 (1st Cir. 1993)("*Rufo II* ")(district court should consider future "to be satisfied that there is relatively little or no likelihood that the original constitutional violation will promptly be repeated when the decree is lifted").

Nevertheless, KCCF faults the District Court's reasoning for the following reasons: first, defendants point out that the District Court has essentially "ratcheted up" the requirements of the consent decree regarding overcrowding by requiring a vague "buffer" between actual jail population and the consent decree's maximum allowable capacity of 95%. Second, the District Court credited "reports" of a possible increase in inmates which were not part of the record in the case. Third, defendants argue that the District Court was unable to point to anything in the record to justify its "suspicion" regarding defendants' motives.

We find these arguments persuasive. By suggesting the need for a "comfortable buffer" beneath the 95% cap required by the consent decree, the District Court not only imposed a rather nebulous requirement which defendants could not accurately target but also the District Court was essentially adding a buffer to a buffer. The consent judgment already essentially required that KCCF have 50 empty beds at all times in their renovated facility (5% of the beds) to avoid the risk of overcrowding. The District Court required even more empty beds. We find the additional "buffer" to have been an unnecessary and excessive requirement for dissolution of the consent judgment.

Furthermore, the District Court, by crediting "reports" not in the record along with unsubstantiated assertions of plaintiff's counsel, grounded the denial of defendants' motion on evidence that was not before the court. The lack of "indicia of reliability" in such evidence is, of course, patent. The District Court may have decided to rely on such future possibilities because it minimized the costs to defendants of remaining under the jurisdiction of the court pursuant to the consent judgment.

We believe the District Court underestimated costs that defendants sustain through continued imposition of the terms of the consent judgment and therefore regarded defendants' desire to vacate the judgment with undeserved suspicion. Functioning under a consent judgment entails real costs. In this case, KCCF was required by the consent judgment to keep fifty beds empty. If any of

the fifty beds were used for more than three consecutive days, an increasingly costly mechanism would be triggered. Even if there were little or no risk of exceeding the consent judgment's limits, there were the costs of constant monitoring. Wanting to avoid these costs, even if these costs are not great, should not give rise to suspicion.

Defendants met the *Dalzell* requirement, proving that the goals of the consent judgment had been achieved. *Dalzell*, 925 F.2d at 961. They also met the standard that the First Circuit articulated in *Rufo II* that there is "little or no likelihood that the original *constitutional violation* will promptly be repeated when the decree is lifted." *Rufo II*, 12 F.3d at 292 (emphasis added). *Rufo II* does not require the District Court to inquire as to whether defendants may or may not meet the strict terms of the consent decree in the near future, but whether a constitutional violation is threatened. Defendants need not prove, nor could they ever, that KCCF's population will always remain within the limits of the consent judgment. Conditions may, at some times, exceed those limits. Exceeding those limits is not necessarily overcrowding, however, and, moreover, overcrowding itself is not necessarily unconstitutional. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Hoptowit v. Ray*, 682 F.2d 1237, 1249 (9th Cir.1982).

Judicial oversight over state institutions must, at some point, draw to a close. *See Bd. of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 248–49, 111 S.Ct. 630, 637–38, 112 L.Ed.2d 715 (1991). The District Court recognized that defendants have illustrated good faith and diligence in reaching agreement with plaintiffs and substantially succeeded in meeting their obligations under the consent judgment. *See Johnson v. Heffron*, No. G 79–85, slip op. at 5 (W.D.Mich. Nov. 18, 1983)("Plaintiffs admit, through their counsel, that Defendants have not been idle and have addressed themselves directly to the overcrowding problem."); *Id.* at 6 (District Court is "most impressed with the efforts and good will of the Defendants...").

The District Court suggested that the appellants, had they provided evidence of just six more months of conformance with the decree, would have merited relief from judgment. That period of time has since elapsed. In any event, we think that the defendants' record of substantial compliance with the consent decree and their commended good faith efforts to improve conditions at KCCF for pretrial detainees obviated the need for another six-month probationary period.

Finally, our disposition of the present case is consistent with recent federal legislation aimed at curbing federal involvement in the administration of state correctional facilities. In fact, the recently passed Prison Litigation Reform Act specifically envisions cases such as this one in which defendants seek termination of prospective relief on the grounds that violations of Federal rights have been corrected. Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (April 26, 1996)(amending 18 U.S.C. § 3626(b)(2)). Our decision in this case would be the same had this new law not been enacted but the Act nevertheless supports if not demands this disposition.

We therefore conclude with firm conviction that the trial court committed a clear error of judgment in denying defendants' motion for dissolution of the consent judgment. *See Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)(articulating abuse of discretion standard).

### III.

For the foregoing reasons, the District Court is **REVERSED** and the case is **REMANDED** for entry of relief from judgment pursuant to rule 60(b) of the Federal Rules of Civil Procedure.