RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: OHIO EXECUTION PROTOCOL LITIGATION.

_____

ANGELO FEARS, et al.,

  *Petitioners-Appellants,*

  *v.*

JOHN KASICH, et al.,

  *Respondents-Appellees.*

No. 16-3149

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:11-cv-01016—Gregory L. Frost, District Judge.

Argued: November 18, 2016

Decided and Filed: December 30, 2016

Before: NORRIS, SILER, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Erin G. Barnhart, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellants. Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Allen L. Bohnert, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, Randall Porter, Kimberly S. Rigby, Rachel Troutman, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, S. Adele Shank, LAW OFFICE OF S. ADELE SHANK, Columbus, Ohio, Lawrence J. Greger, GREGER LAW OFFICE, Dayton, Ohio, Vicki Werneke, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, Laurence E. Komp, Manchester, Missouri, for Appellants. Charles L. Wille, Thomas Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

  SILER, J., delivered the opinion of the court in which NORRIS, J., joined. STRANCH, J. (pp. 13–18), delivered a separate dissenting opinion.

—————————

## OPINION

—————————

SILER, Circuit Judge.    Plaintiffs are Ohio death-row inmates challenging Ohio's execution protocol and practice.  Defendants include Ohio officials as well as anonymous drug manufacturers, compounders, intermediaries, and others involved in Ohio's execution process.  Plaintiffs appeal from a district court's entry of a protective order precluding the disclosure of any information that could reveal the identity of suppliers or manufacturers of Ohio's legal-injection drugs as well as anyone related to carrying out executions in Ohio.  During the pendency of this appeal, we affirmed a related appeal from an order dismissing certain constitutional challenges to Ohio's execution protocol.  *Phillips v. DeWine*, No. 15-3238, 2016 U.S. App. LEXIS 19697 (6th Cir. Nov. 12, 2016).  We now **AFFIRM** the entry of the protective order because the district court did not abuse its discretion in concluding that Defendants established good cause for protection from certain discovery.

I.

Starting around 2011, Ohio death-row inmates filed a spate of lawsuits in the Southern District of Ohio to challenge Ohio's protocols for lethal injunction.  In 2014, Ohio enacted legislation to amend Ohio Revised Code § 149.43, thereby creating two new statutes, Ohio Revised Code §§ 2949.221 and 2949.222, to address confidentiality of information about lethal injection in Ohio.  The secrecy statute precludes, among other things, the release of information that would identify the manufacturer or supplier of drugs for use in Ohio's lethal-injection protocol.  *See* Ohio Rev. Code Ann. §§ 2949.221, 2949.222.  In *Phillips*, the district court dismissed some of the litigation challenging the protocol on grounds of lack of subject-matter jurisdiction and failure to state a claim.  *Phillips v. Dewine*, 92 F. Supp. 3d 702, 718 (S.D. Ohio 2015).

In the litigation giving rise to this appeal, Defendants moved for a protective order to prevent the release of any information in their possession that could identify the sources of

Ohio's lethal-injection drugs.  After hearing evidence and testimony from four witnesses, the district court granted the motion and issued the following protective order:

> The Court therefore ORDERS that any information or record in Defendants' possession, custody, or control that identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions is protected and not subject to discovery.  This protective order is intended to extend to those persons who or entities that have not waived or forfeited its protection and who manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution under Ohio Revised Code § 2949.22.  This protective order governs discovery only in this litigation and does not apply outside this litigation or (in the increasingly unlikely event) after this litigation concludes.

*In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2015 U.S. Dist. LEXIS 144926, at *45–46 (S.D. Ohio Oct. 26, 2015).  The district court certified the order for interlocutory appeal, and we granted Plaintiffs' petition to appeal.  Shortly thereafter, the district court reassigned and consolidated *Phillips* with this litigation.  Several days after the protective order issued, Plaintiffs moved for a modification that would permit limited disclosures to counsel only under the designation "attorney's eyes only."  The district court denied the motion, noting that "disclosure of identities subjects the disclosed persons or entities to suit."[1]

In October 2016, before oral argument, the parties notified the court that Ohio plans to move forward with three scheduled executions, starting with Ronald Phillips's execution in January 2017.  Defendants represented that they intend to use a new three-drug protocol: midazolam hydrochloride, potassium chloride, and one of the following drugs:  rocuronium bromide, vecuronium bromide, or pancuronium bromide.  The new protocol mirrors the Oklahoma protocol approbated by the Supreme Court in June 2015. *See Glossip v. Gross*, 135 S. Ct. 2726, 2734–35 (2015) ("The option that Oklahoma plans to use to execute petitioners calls for the administration of 500 milligrams of midazolam followed by a paralytic agent and

---

[1]The district court found the request "not well taken," noting "confidential information has appeared in the media, despite this Court establishing protections to preclude such disclosure."  Since that order, Plaintiffs submitted a notice to the district court, representing that a journalist found the information through a public docket entry.

potassium chloride.  The paralytic agent may be pancuronium bromide, vecuronium bromide, or rocuronium bromide, three drugs that, all agree, are functionally equivalent for purposes of this case.").[2]

We affirmed the judgment in *Phillips* in November 2016 and now address the instant discovery dispute.  *Phillips v. DeWine*, No. 15-3238, 2016 U.S. App. LEXIS 19697, at *30–31 (6th Cir. Nov. 12, 2016).

## II.

Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  We review the grant of a protective order for abuse of discretion.  *Serrano v. Cintas Corp.*, 699 F.3d 884, 899-900 (6th Cir. 2012).  "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error:  'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'"  *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748 n.2 (2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).  To that end, "in reviewing a trial court's evidentiary determinations, this court reviews de novo the court's conclusions of law and reviews for clear error the court's factual determinations that underpin its legal conclusions."  *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006) (citation omitted).

## III.

Plaintiffs argue that the protective order prevents the prosecution of their federal and state causes of action.  Plaintiffs maintain that the protective order is contrary to law because the order cuts off all discovery on Ohio's execution procedures, including previously produced discovery.  They contend that the otherwise barred discovery would assist in identifying the suppliers or

---

[2]The parties do not brief the implications of this new protocol on the protective order.  We assume without deciding that the new protocol falls within the scope of the protective order.  This assumption is not binding on the district court, and the district court maintains discretion to modify the protective order as circumstances dictate.

manufacturers of Ohio's legal-injection drugs as well as anyone related to carrying out executions in Ohio. Plaintiffs impugn the sufficiency of unknown laboratories using unknown testing protocols to evaluate drugs manufactured or compounded by an anonymous source.

The protective order runs afoul with Rule 26(c), Plaintiffs argue, because Defendants failed to make particular and specific demonstrations of harm. Plaintiffs contend that the district court conflated all groups of Defendants and failed to analyze the particularized harm suffered by each discrete entity. Plaintiffs suggest that the district court immunized the drug manufacturers and their affiliates from litigation by relying on generalized, objective harm suffered from the risk of threats, intimidation, and harassment. Even fear of abusive litigation, Plaintiffs contend, is insufficient to justify a protective order. According to Plaintiffs, the record is devoid of evidence that, but for the protective order, Ohio could not carry out executions because of harm to drug manufacturers upon discovery of their identities. Plaintiffs emphasize that Defendants did not allege Ohio's inability to carry out executions as a basis for the protective order. But even so, according to Plaintiffs, Defendants failed to produce or point to any credible, specific evidence in the record to demonstrate an inability to obtain lethal-injection drugs or to carry out executions in the absence of a protective order.[3]

Plaintiffs posit that even if evidence exists of harm to Defendants, the harm caused by cutting off discovery in this case outweighs the harms attributed to Defendants. Plaintiffs argue that the protective order violates procedural due process because the order circumscribes their right to vital information to support their claims. Plaintiffs also asperse the protective order as federalizing a state privilege under Ohio Revised Code §§ 2949.221 and 2949.222, which has no foothold under federal law. In the alternative, to mollify Defendants' concerns, Plaintiffs request a designation of "attorney's eyes only" for the discovery covered by the protective order. We disagree and conclude that the district court did not abuse its discretion when entering the protective order.

---

[3]To the extent Plaintiffs argue that the protective order is unnecessary on the basis that the record contains no evidence of actual drug manufacturers for the current protocol, this position extrapolates too much from Defendants' representation that "[t]here was no evidence before the District Court that there were any '[Drug] Source Defendants' who could be expected to seek their own protective order or who could be deemed functionally immunized." Defendants have never admitted that such manufacturers do not exist, just that they are not identified in the record.

A.

Parties may seek discovery of any relevant, non-privileged information. Fed. R. Civ. P. 26(b)(1). But district courts have discretion to limit the scope of discovery when the information sought is overbroad or unduly burdensome. Fed. R. Civ. P. 26(b)(2); *see also Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("Th[e] desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant."). The district court may limit the scope of discovery "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). "Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (internal quotation marks omitted & citations omitted).

To sustain a protective order under Rule 26(c), the moving party must show "good cause" for protection from one (or more) harms identified in Rule 26(c)(1)(A) "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano*, 699 F.3d at 901 (citations omitted). The enumerated harms available to support a protective order are "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause exists if "specific prejudice or harm will result" from the absence of a protective order. *Father M. v. Various Tort Claimants* (*In re Roman Catholic Archbishop*), 661 F.3d 417, 424 (9th Cir. 2011). A court must balance the "right to discovery with the need to prevent 'fishing expeditions.'" *Serrano*, 699 F.3d at 902 (citations omitted).

B.

We conclude that the district court did not clearly err in its factual findings. After hearing testimony and admitting evidence, the district court found that the disclosures would cause an undue burden on and prejudice Defendants by subjecting them to the risk of

harm, violence, and harassment and by making it difficult for them to obtain lethal-injection drugs. Plaintiffs do not dispute that the district court provided an accurate account of the record. Instead, they inveigh against the result arising from how the district court resolved testimony and weighed the absence of evidence from certain pertinent sources. True, the record lacks an affidavit from an Ohio manufacturer under duress or direct evidence from one of Ohio's drug sources; still, the accumulation of evidence favors a protective order. *See Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960)) ("It is hornbook law that direct evidence of a fact is not necessary. 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" (citation omitted)).

The district court scrutinized with care Ohio's representations, probing whether Defendants (either directly or derivatively) suffered a burden or prejudice from identifying certain entities in association with lethal injection. For example, Defendants produced a privilege log on the eve of the evidentiary hearing, which identified persons or entities that have applied for statutory protection from disclosure. *In re Ohio Execution Protocol Litig.*, 2015 U.S. Dist. LEXIS 144926, at *26. The district court was skeptical of how to weigh that evidence. *Id.* In addition, when assessing the witnesses themselves, the district court observed that the testimony was "largely speculative or conclusory, if not outright hyperbolic." *Id.* at *23. But, contrary to Plaintiffs' contentions, the record persisted from there. Avoiding reflexive solicitude, the district court considered Defendants' affirmative attestations of the need for protection. Without legitimate dispute, the district court was apprised of how Ohio has been hobbled in its efforts to perform executions. Amid the stalled status of executions in Ohio, the district court observed, "[i]f execution by lethal injection is legal, and the United States Supreme Court has repeatedly said it is, then it follows that there must be some manner of carrying it out." *Id.* at *43. The district court referenced "an email sent to an Oklahoma compounding pharmacy by a citizen," [which] evinces an undeniable (and perhaps even faith-based) risk to pharmacies or compounders, including the personnel that work at such entities." *Id.* at *24–26. In view of witness testimony and other evidence about Ohio's execution history, the district court found that "[i]f the question is whether a reasonable pharmacy owner or compounder would feel burdened by receiving such an email, the answer is likely if not certainly yes." *Id.* at *25. The district court further identified—as non-dispositive evidence—the existence of Ohio's secrecy statute,

finding "the same concerns that apparently led to the creation of the statute exist: the burden on and prejudice to the state that disclosure presents." *Id.* at \*38.

Record evidence supports the district court's finding of "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," of Defendants' burden and prejudice in the absence of the protective order. *See Serrano*, 699 F.3d at 901. Although Plaintiffs disagree with where the findings of fact ultimately lean, they cannot dispute that the district court grounded the findings on competent evidence that supported Defendants' arguments. Plaintiffs criticize the veracity of testimony and production of a vague privilege log, but fail to appreciate that that evidence was not the summation of the record. It is as if Plaintiffs seek to impose a summary-judgment evidentiary standard when Rule 26(c) merely requires the district court to weigh evidence against the movant's burden. *See id.* at 902 (citations omitted). Although the district court did not segregate the burdens and prejudices among Defendants with stark precision, it correctly found corresponding burdens on the willingness to provide lethal-injection drugs to Ohio and the state actors' ability to perform executions. The scope of the protective order addresses the identified burdens. To the extent Plaintiffs maintain that Defendants never asserted a burden or prejudice in carrying out executions, that contention is belied by the pragmatic reason Ohio moved for protection initially and the logical consequence of drug manufacturers ceasing to cooperate with Ohio. To ignore Defendants' interest in a capability to perform executions is to ignore the elephant in the room. Although the district court did not mention the past occurrence of compromised attempts to perform lethal-injection executions, that omission has no bearing on the protective order. Plaintiffs are free to press that evidence on the merits and fail to substantiate how that evidence undermines the entry of the protective order.

## C.

The district court did not commit legal error in entering the protective order upon a conclusion that Defendants had demonstrated good cause for protection. Plaintiffs conceded at oral argument that no binding case law exists in favor of their position. Although Plaintiffs later supplemented the record with cases supporting the need for discovery to support their claims, we have never sanctioned blind-faith efforts to unearth the supposition of wrongdoing. *See Serrano*,

699 F.3d at 902; *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("We will not allow Signal to go on a 'fishing expedition,' with the mere 'hope' that it will obtain such information."). That Ohio's execution protocol is *sui generis* makes comparisons among other cases for abuse of discretion less apt. But if anything, cases under similar circumstances favor Defendants. *See Phillips*, 2016 U.S. App. LEXIS 19697, at 29–30 ("But no constitutional right exists to discover grievances or to litigate effectively once in court."); *In re Mo. Dep't of Corr.*, No. 16-3072, 2016 U.S. App. LEXIS 18436, at *12 (8th Cir. Oct. 13, 2016) (vacating original panel opinion, granting petition for rehearing, and granting petition for writ of mandamus because identity suppliers of lethal-injection drugs had no relevance to the inmates' Eighth Amendment claim, disclosure of the supplier's identity placed an undue burden on the state by preventing it from acquiring the drug for executions, and the inmates offered no assurances that active investigation of the supplier would not lead to further disclosure of identities); *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1292–94 (11th Cir.) (death row inmate has no constitutional right to "know where, how, and by whom lethal injection drugs will be manufactured[,]" and no "due process right-of-access claim" to this information exists), *cert. denied*, 136 S. Ct. 998 (2016).

The district court did not err in concluding that Defendants established good cause for the protective order upon finding particularized harm to the drug manufacturers and Ohio's capability to perform executions. As the district court's findings support, but for the protective order, Defendants will suffer an undue burden and prejudice in effectuating Ohio's execution protocol and practices. *See Cooey v. Strickland*, 604 F.3d 939, 946 (6th Cir. 2010) ("The state has a 'significant interest in meting out a sentence of death in a timely fashion.'" (citation omitted)). That Defendants could have provided more evidence by offering execution team members behind a screen or affidavits from drug sources has no moment. Plaintiffs fail to cite case law compelling Defendants to submit for screened inquisition individuals for which they seek protection. To the extent Plaintiffs suggest that Ohio could follow its lethal-injection protocols by purchasing drugs on the open market and testing the drugs themselves, such a suggestion invites the type of judicial oversight over state proceedings that we are loath to indulge without a greater showing of need. *Cf. Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996) ("Judicial oversight over state institutions must, at some point, draw to a close.").

In addition, the district court did not err in rejecting Plaintiffs' request to designate certain information subject to the protective order as "attorney's eyes only." Taken to an extreme, all protective orders could be circumvented by requesting that otherwise undiscoverable information be made available for use by counsel only.

The protective order does not prevent Plaintiffs from prosecuting their claims. The record is replete with even-handed analysis aimed at balancing the need for discovery with strictures to maintain appropriate protection for certain individuals and entities. *See, e.g.*, *In re Ohio Execution Protocol Litig.*, 2015 U.S. Dist. LEXIS 144926, at *39 ("This Court is cognizant of the competing interests at issue here, both those presented by the claims asserted in this case and those overarching goals inherently underlying the instant dispute."). The district court considered that the protective order, in shielding the identity of drug sources, may prevent Plaintiffs from knowing technician and execution team's qualifications, the means by which Ohio obtained the lethal-injection drugs, and whether Ohio has complied with the manufacturing process (among other information). Yet Plaintiffs know the drugs to be used under the current protocol. And Plaintiffs do not dispute that—although they would like to perform more exacting tests—those drugs are subject to compliance with and adherence to federal and state laws and regulations. Defendants emphasized at oral argument that Plaintiffs' claims are legally implausible and that *Phillips* "buttresses" their dismissal.[4] To the extent Plaintiffs' claims fail as a matter of law without need for discovery, the district court should be afforded the opportunity to address their viability in the first instance. Defendants also intimated that they would be amenable to providing samples of the drugs for testing upon court order, which Plaintiffs have failed to pursue as of the date of oral argument. Although knowledge of the facilities and handlers of the drugs could inform Plaintiffs' testing methodologies, the harm presented by identification of those intimately involved in an execution outweighs the speculative benefit of complete understanding of an industry already heavily regulated. Beyond cavil, this result does not federalize the Ohio secrecy law as a common-law privilege for immunity. The district court referenced the statute as an evidentiary data point for analysis only. And those parties can, of

---

[4]Plaintiffs maintain that the protective order prevents essential discovery for various causes of action (e.g., Ohio Corrupt Practices Act; Federal Controlled Substances Act; Federal Food, Drug, and Cosmetic Act; Racketeer Influenced and Corrupt Organizations Act).

course, still be sued upon knowledge or information of malfeasance. No party defends this result as endorsing a new federal privilege, and we decline to comment further on the effect of secrecy statutes in other disputes.

Sensitive to the procedural-due-process concern that an inmate must have a fair opportunity to challenge unlawful methods of execution, the protective order does not stonewall Plaintiffs' efforts to obtain relief. Should Plaintiffs seek to obtain samples of the drugs and their independent testing reveal irregularities (or if salient information from other sources comes to light), such events could generate cause for greater investigation and modification of the protective order. *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011) (rejecting due process arguments and noting that "[u]ntil the prisoners can put forth evidence that the Director has deviated from the approved protocol, they have no 'nonfrivolous' Eighth Amendment claim to bring and thus suffer no 'actual injury' by being unable to bring such a claim"). Plaintiffs have not made a showing on appeal of probable value for additional investigation. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 224–25 (2005) (citation omitted).

Plaintiffs are correct that risk of litigation is not one of Rule 26(c)'s enumerated harms, but, as the district court concluded, undue burden is a harm that merits protection. *See* Fed. R. Civ. P. 26(c)(1). Although a discussion of litigation risk could be gleaned from the protective order and subsequent orders, there is no serious dispute that the district court did not rely on the omnipresence of litigation when entering the protective order. *In re Ohio Execution Protocol Litig.*, 2015 U.S. Dist. LEXIS 144926, at *38–39 ("Plaintiffs argue that Defendants are raising Rule 26(c) concerns by proxy, conflating burdens on and prejudice to non-party persons or entities with Defendants' interests. This contention ignores that the burden is on Defendants and the prejudice is a loss of the ability to pursue, much less fulfill, a lawful duty.").

Plaintiffs disclaim that they seek a ruling that the death penalty itself is unconstitutional. Just that they seek relief from an execution method sanctioned by the Supreme Court in *Glossip* under a protocol whose constitutionality we affirmed in *Phillips*. Certainly some jurists have questioned the constitutionality of the death penalty. Doubtless Ohio has been hindered in its efforts to execute inmates. Yet the law remains valid, and Ohio has an interest in following it through. *Thompson v. Bell*, 580 F.3d 423, 446 n.1 (6th Cir. 2009) ("[T]he government has an

essential interest in carrying out a lawfully imposed sentence." (citations omitted)).  Opprobrium alone cannot subvert a lawful practice.

IV.

The district court did not clearly err in its factual findings, and the district court correctly concluded that Defendants have established good cause for the protective order.  We cannot detect an abuse of discretion on this record.  We therefore **AFFIRM** because the district court did not abuse its discretion in entering the protective order.

---

**DISSENT**

---

JANE B. STRANCH, Circuit Judge, dissenting.   This is another in a series of cases litigated against the backdrop of Ohio's failure to properly carry out the death sentences of its prisoners, and includes a case in which I previously dissented.  *Phillips v. DeWine*, 841 F.3d 405, 420–33 (6th Cir. 2016).   In *Phillips*—a constitutional challenge to Ohio Revised Code §§ 2949.221–.222, Ohio's lethal-injection secrecy statute—the majority dismissed the Plaintiffs' claims for lack of standing and failure to state a claim.  841 F.3d at 410.  In this suit, however, the Plaintiffs challenge not the secrecy statute itself, but the district court's protective order.

The Plaintiffs and Defendants agree that the Ohio secrecy statute does not control this federal discovery issue.  The purposes and particulars of discovery under Rule 26, and the liberal treatment that such discovery must be accorded, govern this case.  In discussing the broad scope of discovery authorized by the federal rules, the Supreme Court has explained that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The question before us is whether the protective order issued by the district court satisfies the principles of discovery and the requirements of Rule 26.

The order extends broadly to cover any information "that identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs" and any persons or entities "who manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution." *In re Ohio Execution Protocol Litigation*, 2015 WL 6446093, at *9 (S.D. Ohio Oct. 26, 2015).  The majority upholds the order's issuance as in compliance with Rule 26 and, I think appropriately, leaves interpretation of the specifics to the court below.  I would not uphold issuance of the order

because the record establishes that the district court failed to follow the proscriptions of discovery and the applicable federal rules.  I therefore respectfully dissent.

## I.  The Protective Order

To sustain a protective order under Rule 26(c)(1), the moving party must specify one of the harms listed in the rule, and must illustrate that enumerated harm "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).  The party must further show that the harm outweighs the need for the requested information.  *Id.*  The enumerated harms available to the Defendants are annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  "The burden of establishing good cause . . . rests with the movant" who must "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought."  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)); *see also* 8A Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 2036 (3d ed. 2016) ("To justify restricting discovery, the harassment or oppression should be unreasonable . . . .").

The district court concluded that disclosing the identities of those entities and persons involved in the acquisition of execution drugs and related materials would cause an undue burden on the Defendants by subjecting them to the risk of harm, violence, and harassment and by making it difficult for them to carry out executions.  I find the justifications offered by Defendants to be too speculative to validate this protective order under Rule 26(c)(1).

A.  The risk of harm, violence, and harassment

At a limited hearing, the district court heard testimony from four witnesses regarding the potential risk stemming from the requested disclosures.  The Defendants' security and threat assessment expert, J. Lawrence Cunningham, concluded that a "substantial risk of threats or harassment exists absent confidentiality,"  WL 6446093, at *2, while the Plaintiff's expert in the same field, Thomas R. Parker, found that there was no substantial risk, *id.*  The district court determined that the experts largely "cancelled one another out" and that the "assertions of

burdens or prejudice connected to disclosure are largely speculative or conclusory, if not outright hyperbolic." *Id.*

Cunningham's testimony was undoubtedly speculative. His methods for determining whether there was a security risk consisted mainly of surfing the internet, and attempting to extrapolate the existence of potential threats in the death penalty arena by looking at advocacy regarding other issues: abortion, animal rights, and the morning-after pill. R. 548, PageID 15136–37, 15167–68 (noting that while it "would be nice to have a direct threat," he needed to be creative and look at every possibility). Cunningham himself stated that he was unaware of any known threat against anyone involved in implementation of the death penalty in Ohio, and unaware of threats against any compounding pharmacy that supplies Ohio. The Defendants offered no evidence that any Ohio pharmacy or pharmacist had ever been threatened, harmed, or harassed as a result of providing execution drugs. As Sister Helen Prejean pointed out in her testimony for the Plaintiffs, anti-death penalty advocates seek to preserve the lives of even those convicted of serious crimes—hardly a group of activists likely to revert to violence against pharmacy employees. R. 548, PageID 15149 ("No violence against anyone because our whole point is to try to show that using violence to try to solve such problem doesn't solve anything.").

This leaves only one document relied on by the district court—a single email produced by the Defendants, sent by a citizen to a pharmacy in Oklahoma. The court extrapolated that a "reasonable pharmacy owner or compounder" would likely feel burdened by receiving such an email. 2015 WL 6446093, at *3. But that email is too attenuated from any specific, enumerated harm applicable to this case. The record reveals no evidence that any such party in Ohio received a message of this kind, or that any similar threat had ever been communicated. The Defendants' evidence was simply insufficient to establish a harm as required under Rule 26(c)(1) with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *See Serrano*, 699 F.3d at 901.

B. Ohio's ability to continue carrying out executions

Without evidence of any actual threat to support issuing the order, the district court determined that Ohio would be unable to carry out executions unless it could maintain

confidentiality regarding its sources for the execution drugs. The majority concludes that the Defendant's ability to carry out executions is the reason Ohio moved for protection—the "elephant in the room." Defendants, however, fail to show that they even raised this argument or that providing the disclosures would actually prevent executions.

Defendants never alleged that they would be unable to carry out executions; they discussed this issue only in the context of their unsuccessful attempt to invoke a privilege under the Ohio secrecy statute. Even if it had been raised, that would not relieve the Defendants of their burden to produce specific evidence of their need for a protective order under the facts of this case. References to the passage of Ohio's secrecy statute and the reasons supporting its passage are insufficient to satisfy Defendants' burden.

The Defendants sought to rely on their production of a privilege log the night before the evidentiary hearing that identifies six persons or entities that had applied for statutory protection from disclosure under the Ohio secrecy statute. The district court found this to be informative of whether there were entities that sought anonymity but concluded that "some entities might apply for protection even if they might assist Ohio even if confidentiality were not obtained." 2015 WL 6446093, at *3. As the district court recognized, a desire for secrecy does not show an inability to carry out executions without it. It does not satisfy Defendants' burden merely to make the court aware of the fact that some entities prefer anonymity. There was simply no evidence in the record showing that compounding pharmacies would not provide execution drugs to Ohio absent their newly-granted anonymity, or that the risk of threats, intimidation or harassment would prevent suppliers from taking part in executions.

Indeed, there was no need for the district court's "speculation" about the harm, 2015 WL 6446093, at *4, because courts have a number of methods to protect those involved during the taking of evidence. For example, execution team members could have provided the information necessary for the court to make an informed determination regarding the order by testifying behind a screen or by submitting sealed affidavits. It was not only unnecessary for the court to engage in "estimating probabilities," *id.,* it was also inappropriate—the burden of establishing good cause by proving specific facts rests on the Defendants. *See Nix*, 11 F. App'x at 500.

In sum, the information in this record was speculative and did not show a "clearly defined" injury, which is essential to satisfy the requirements of Rule 26(c)(1).  *See id.*

C.  The broad protective order prevents relevant and necessary discovery

The Plaintiffs argue that the protective order "effectively cuts off virtually all discovery related to Ohio's execution procedures" and that the information is relevant and necessary for their claims.  The order, in shielding the identity of drug sources, prevents the Plaintiffs from knowing a vast array of information:  technician and execution team's qualifications, the means by which Ohio obtains the lethal-injection drugs, whether Ohio has complied with the manufacturing process, among other evidence.  All in all, the protective order prevents the Plaintiffs from determining whether the Defendants are fulfilling their duty to provide humane and constitutional executions to inmates with fast-approaching execution dates.

The Defendants argue that performing their own tests on the drugs for identity and potency and reporting those results to the Plaintiffs is the "most reliable means of assessing their quality, reliability, and efficacy."  The Plaintiffs disagree, illustrating their concerns with a recent situation in which drugs that were sold as sterile and compliant with governing regulations by an independent lab, New England Compounding Center, were actually tainted and resulted in a meningitis outbreak that killed 16 people and injured 153, in Tennessee alone.  *See* Timothy W. Martin, *Tainted Drug Passed Lab Test*, Wall Street Journal, Oct. 24, 2012; Kurt Eichenwald, *Killer Pharmacy:  Inside a Medical Mass Murder Case*, Newsweek, April 16, 2015. Comparable concerns are raised by Ohio's prior assurances concerning the drugs to be used to execute Dennis McGuire—a protocol that resulted in a 25-minute long botched execution. *See* Erica Goode, *After a Prolonged Execution in Ohio, Questions Over 'Cruel and Unusual'*, N.Y. Times, January 17, 2014, at A12.

The Plaintiffs argue that allowing Defendants to test their lethal-injection drugs is insufficient on its own because, among other reasons, that prevents Plaintiffs from testing for the presence of contaminants, from obtaining necessary information about the compounder's processes, equipment, and practices, and from verifying the results of the secret tests.  The Plaintiffs provide a lengthy list of the kinds of evidence the order will keep from them, including

investigations into botched executions, non-compliance with written protocol, documentation related to execution drugs, information regarding execution team members and their qualifications, materials related to other individuals involved in executions, execution training records, and more. In sum, they do not have the information they need to ensure that the testing is adequate or that the executions will be carried out in a constitutional manner. The information barred by the order is, to say the least, highly relevant and necessary for their claims. Whatever burden there is on Defendants could have been reduced or eliminated with a narrow protective order limiting disclosure to counsel and experts.

## II. Conclusion

The Defendants failed to show that they would suffer a specific, enumerated harm under Rule 26(c)(1), and certainly not one that could outweigh the Plaintiffs' need for the withheld information. Because the record establishes that the district court's order did not follow the principles governing federal discovery as well as the specific requirements of Rule 26, I respectfully dissent from the decision to uphold issuance of the order.

The parties have also presented a number of disputes about the scope and application of certain provisions of the order. Application issues include matters such as discovery that is now withheld but was previously routinely available to Plaintiffs. Disputes on scope include matters such as Plaintiffs' objection that Defendants have expansively interpreted their rights under the order to refuse to provide information during the time frame *before* the drug protocol was amended on October 7, 2016. Simply put, a number of difficult disputes remain. Our remand entrusts the court below with interpreting the provisions and scope of the order and resolving those disputes.